| | |
|---|---|
| 65 | 670 |
| 72 | 412 |
| 65 | 670 |
| 90 | 54 |
| 65 | 670 |
| 96 | 152 |
| 65 | 670 |
| 102 | 459 |
| 65 | 670 |
| 111 | 624 |
| 65 | 670 |
| f122 | 9 |
| f122 | 10 |
| 65 | 670 |
| 135 | 1280 |
| 65 | 670 |
| 155 | 1269 |

## PETER MURRAY v. HENRY HUDSON AND WALLACE HUDSON.

*Adverse possession[1]—Occupancy.*

1. When one enters upon land under *color* of title and with *claim* of ownership, any acts of *user* which are *continuous*, and indicate unequivocally to the neighborhood in which the land is situated that it is appropriated *exclusively* to his individual use and ownership, are sufficient to render the possession adverse.

2. It is not necessary that the occupation of land should be such that a mere stranger passing by the land would know that some one was asserting title to and dominion over it, nor that the land be cleared or fenced, or any building be placed thereon, to render such occupation adverse.

Error to St. Clair. (Stevens, J.) Argued April 14, 1887. Decided, April 28, 1887.

Trespass. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Elliott G. Stevenson,* for appellant.

*Avery Brothers,* for defendants.

MORSE, J. This is an action of trespass commenced before

[1]See *Cook v. Clinton,* 64 Mich. 310 (head-note 2); *Beecher v. Galvin,* 39 N. W. Rep. 469.

a justice of the peace, and transferred to the circuit court for the county of St. Clair upon a plea of title.

The plaintiff's title to the land upon which the alleged trespass was committed was based upon a patent issued by the United States to James Smith, January 10, 1856, and recorded November 6, 1857.

James Smith and wife deeded the land to plaintiff, June 30, 1884. This deed was recorded July 1, 1884. This suit was instituted in October of the same year.

The defendants attempted to justify their entry upon the premises under authority from John S. Hudson, a brother of one of them and a son of the other. The land in question was conveyed to John S. Hudson by one David Bryce and wife, December 22, 1883. The premises had been deeded to Bryce, in April, 1868, by John E. Kitten, who acquired his title under tax deeds issued by the Auditor General for the taxes of 1856, 1859, 1860, and 1862. These tax deeds, for the purposes of this suit, were admitted to be invalid.

The defendants claimed, however, that they, for John S. Hudson, and his grantor, Bryce, had been in adverse possession under the Kitten title for a sufficient length of time to prevent the assertion of the title held by Murray against them. Both Murray and the Hudsons claimed to be in possession of the premises at the time the alleged trespasses were committed. The jury found for the defendants, and also found especially, in reply to questions propounded by plaintiff's counsel, as follows:

"1. Was Murray in possession of the land in question just prior to the alleged trespass? A. No.

"2. Had Bryce and the Hudsons, before the alleged trespass, open, visible, continuous, notorious possession of the land in question for ten years and upwards? A. Yes."

If, therefore, the issue to be determined was fairly submitted to the jury, and there was any evidence tending to show a state of facts supporting the special findings of the

jury, the verdict and judgment in favor of the defendants must stand.

The counsel for the plaintiff contends that there was no evidence tending to show such a possession for 10 years and upwards by the defendants, or those under whom they claim, as would constitute an adverse possession in law.

There is not much dispute as to the character of this possession. The evidence shows that in 1868 the plaintiff had a contract with Kitten for the purchase of his title to this land. He had paid $100 on the contract in 1865. The balance was due in 1866, but he failed to make the payment. Kitten told him that, if he could get any one to buy the land, he would pay him back something. Murray prevailed upon Bryce to purchase the land, and received $50 of the purchase money. The same year (1868) Murray took a job of Bryce to clear and fence 10 acres of the land, and split a few rails upon the place; but for some reason did not finish the job. Murray admits that he has known ever since that Bryce claimed to own the land. He has lived over 30 years within one mile of it. He also knew of Hudson's buying Bryce's title.

While Bryce held the title to this land (40 acres), he lived upon another piece of land owned by him, between which and the premises in question was a 40 acres belonging to one Cribbins. He used the lot in dispute as a wood lot. He took timber from it also for buildings and bridges. At one time a sawing-machine was placed upon another lot near by, and a large quantity of timber hauled from this 40, and sawed into wood. He obtained his wood from it every year, and hauled the fallen timber off. He commenced at one time, soon after its purchase, to build a brush fence around it; but a fire destroyed it, and he never fenced it afterwards. Every one in the neighborhood understood that Bryce owned the land. After Hudson bought the title of Bryce, the defendants commenced to fence the land and clear it. They

also pastured their cattle upon it. Soon after the plaintiff obtained his deed from Smith, he went upon the land and underbrushed four days, and notified Hudson to take his cattle away. He claims that Hudson complied with his request, but afterwards drove the cattle back upon the place, stating that Bryce told him to keep possession. Murray quit work upon a Saturday, and upon the following Monday the Hudsons came and commenced working upon the place. He forbade them working there, stating that he had bought the land and owned it. The Hudsons lived upon a lot adjoining the disputed land.

The circuit judge instructed the jury that, in order to constitute such a possession as would bar the plaintiff's title, or establish a title in Bryce by prescription, the use must have been of so open, visible, and notorious a character as to be equivalent to notice to the persons living in the immediate neighborhood, or the owner, if residing in that locality, that Bryce was in possession, claiming to own the land and controlling it as his own, that such possession must be actual, continued, visible, notorious, adverse, and hostile for the period of time required by the statute; and if Bryce's possession was not so actual, continued, visible, notorious, adverse, and hostile as to indicate to persons residing in the neighborhood that he had the exclusive control and management of the land, the limitation provided for by the statute would not afford the defendants any benefit.

He further said:

"To constitute possession it is not necessary that the land should be enclosed with a fence, or that the same should be cultivated or resided upon, or that buildings should be erected thereon. It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question. If you find, in the spring of 1868 or summer of that year, David Bryce, after getting his deed, began the exercise of such acts of ownership and control as are usual by owners of timber lots when used to

supply a farm in the neighborhood with timber, and his acts were of such an adverse, open, notorious, and hostile nature as to clearly indicate that he asserted exclusive control over it, and that he continued to do so up to the time of his sale to Hudson, and that afterwards Hudson continued with like acts, you would be justified in finding that defendants had been in such possession as to bar any claim of title upon the part of the plaintiff, and your verdict should be for the defendants."

The plaintiff's counsel requested an instruction that the acts of ownership necessary to make out adverse possession to the plaintiff's right must have been of such a character as would indicate to persons passing the land, and the community, an intention to hold possession thereof in himself, which was refused.

We think there was evidence sufficient to be submitted to the jury tending to show an adverse possession in Bryce as against the plaintiff. It is' not necessary that the occupation should be such that a mere stranger passing by the land would know that some one was asserting title to and dominion over it. It is not necessary that the land be cleared or fenced, or any building be placed upon it. *Ellicott v. Pearl,* 10 Pet. 412; *Ewing v. Burnet,* 11 Id. 41; *Langworthy v. Myers,* 4 Iowa. 18; *Booth v. Small,* 25 Id. 177; *Brooks v. Bruyn,* 24 Ill. 372, 380; *Davis v. Easley,* 13 Id. 198.

When Bryce received his deed, and recorded it, and made entry under it, he thereby asserted a hostile title to the original owner; and by the mere act of recording he effected such a disseizin as would authorize the bringing of an action of ejectment against him. *Hoyt v. Southard,* 58 Mich. 432. If Bryce entered upon this land under his deed from Kitten, and used it thereafter as a wood lot appurtenant to his farm in the usual and ordinary way, and exercised such acts of ownership over it as were necessary to enjoy such usual and ordinary use of a wood lot, such acts, being continued and uninterrupted, would amount to actual possession, and such possession, being under color of title and a

claim of right, and exclusive, held so openly and notoriously that the community understood and recognized his claim of ownership, would be adverse. Such adverse possession, continued for 10 years without interruption, would bar the claim of the plaintiff. There was no lack of evidence to show such possession, and the law of the case was fairly submitted by the court.

It is undisputed that the Hudsons, after the purchase by John S., kept up the same character of possession before that exercised by Bryce. Indeed, they went further, partially inclosing the land, and using it also as a pasture as well as a wood lot. The possession of land cannot be more than the exercise of exclusive dominion over it. This possession or dominion cannot be the same or uniform in every case, and there may be degrees even in the exclusiveness of the exercise of ownership. The owner cannot literally occupy a whole tract; he cannot stand upon all of it, or hold it all in his hands. His possession must be indicated by other acts; and these acts must vary according to the circumstances of each case.

When one enters upon land under color of title and with claim of ownership, any acts of user which are continuous, and indicate unequivocally to the neighborhood in which the land is situated that it is appropriated exclusively to the individual use and ownership of the person making such entry, are sufficient to render the possession adverse.

It is also urged as error that the court permitted the evidence to be admitted, and to remain in the case, showing the acts of the plaintiff in selling his contract for this land to Bryce, and putting him in possession of it, and afterwards working upon it under and for Bryce. It is contended by plaintiff's counsel that Bryce's possession must be established by acts of so open, distinct, notorious, and hostile a character as to afford the world knowledge of his claim to the land, and that Murray could not be barred by his own knowledge.

It is true that the entry and occupation of Bryce must have been such that the disseizor is presumed to know from such entry and occupation that the possession is adverse; but we can see no objection to bringing the knowledge of specific acts of such entry and use directly home to the party holding and claiming the title. It was competent to show that Murray knew Bryce bought this land in 1868, and help sell it to him, and received part of the payment, and that he worked on the place under Bryce, and knew all these years that he was claiming to own it, to establish his knowledge of the adverse possession claimed by defendants.

The plaintiff also complains that the court refused to charge the jury that the payment of taxes by Bryce did not constitute adverse possession, but only evidence of claim of ownership, which is only one of the necessary elements of adverse possession. The court made no reference to the payment of the taxes in his charge, and it is claimed by plaintiff's counsel that this was equivalent to instructing them that such payment was evidence of adverse possession. We think that the payment of taxes by Bryce during his claim of ownership was properly admitted in evidence, and that it had some bearing not only to establish the claim of ownership, but, under the circumstances of the occupation, it had a tendency to show adverse possession in Bryce, as it appears that it was assessed to him. *Rayner v. Lee*, 20 Mich. 387.

As the jury found specially that Murray was not in possession, and that the defendants were, it is not necessary to consider the other errors alleged, as they relate to the right of Murray to bring this action if no one was in actual possession of the land.

The judgment is affirmed, with costs.

The other Justices concurred.