KINGSTON *v.* GUCK.[1]

1. ADVERSE POSSESSION — SEPARATE DEEDS OF CONTIGUOUS TRACTS — DOMINION OVER PART OF TRACT — SUBSEQUENT CONVEYANCES.

Where the same grantor conveys to the same grantee two separate descriptions of land, contiguous to each other, by separate deeds, which are thereafter used, dealt with, and deeded by the grantee and his successors in title as one description, acts of dominion over any portion of the land covered by the entire description are referable to the whole, in any event, after the two descriptions are merged in one.

2. SAME—TRESPASS—ACTS OF OWNERSHIP—POSSESSION CONSISTENT WITH CHARACTER OF LAND.

Where defendant and his immediate predecessors in title, in

[1] Rehearing denied February 2, 1909.

1893 entered into possession of certain land, under color of right and assertion of ownership, and exercised acts of dominion over it consistent with its character without objection from the holder of the paper title until 1907, his title will be deemed established by adverse possession.

Appeal from Keweenaw; Streeter, J.  Submitted November 17, 1908.  (Docket No. 92.)  Decided December 21, 1908.

Bill by John W. Kingston, receiver of the American Mining Company, against Frederick K. Guck, Edmund Bruneau, and others, to set aside a sale of land delinquent for taxes, and to remove a cloud from the title to said land.  Defendants Bruneau filed an answer in the nature of a cross-bill claiming title to said land by adverse possession.  From a decree for defendants, complainant appeals. Affirmed.

*Kerr & Petermann* (*Frank E. Robson*, of counsel), for complainant.

*Hanchette & Lawton* (*D. H. Ball*, of counsel for defendants.

The complainant is the receiver of the American Mining Company, whose charter expired in 1894, appointed September 10, 1906, in proceedings pending in the Keweenaw circuit court in chancery, to wind up its affairs.  Prior to 1877 the American Mining Company was the owner of the E. ½ of section 11, town 57 north, range 32 west, in Keweenaw county, obtaining title under sundry conveyances, commencing with patents of the United States. The land in question was sold, as delinquent for the taxes assessed thereon for the year 1877, in two parcels.  John Senter purchased the same from the State of Michigan as follows:  The N. E. ¼ of section 11 by tax deed dated August 5, 1880, and recorded August 13, 1880, and the S. E. ¼ of section 11 by tax deed dated May 21, 1880, and recorded April 7, 1884.  Senter also obtained tax deeds

for each of the two parcels mentioned for the taxes of 1878, each of these deeds being dated May 16, 1906. Senter conveyed the E. ½ of section 11 to Albert A. Brockway by deed dated May 24, 1886, recorded November 28, 1888, and Brockway conveyed the same parcel to defendant Edmund Bruneau by warranty deed dated July 15, 1895, which deed was duly recorded. Mary Bruneau is the wife of Edmund. When the bill was filed (July 20, 1907) Frederick K. Guck was the recorded owner under a deed from Bruneau and wife, dated February, 1906, and defendant Faucett appeared to have some interest under a power of attorney acknowledged December 4, 1906, and recorded. Guck and wife reconveyed to defendant Bruneau after the filing of the bill, July 30, 1907, and filed a disclaimer. Defendants Faucett and wife and Bruneau and wife answered, claiming by the chain of title from Senter and the tax deeds above mentioned and by adverse possession. The American Mining Company ceased business about 1877, and practically abandoned its lands. It had no officers or overseers in control or in charge of its property in Keweenaw county. Neither the stockholders, directors, nor officers took any action in caring for its property until 1906, when stockholder Fisher filed a bill to wind up the corporation. The case was heard on pleadings and proofs in open court in the Keweenaw circuit court in chancery. Bruneau, by his answer, as well as on the argument in the court below, relied upon both the 10 and 15 year statute of limitations. Subdivisions 2 and 3, § 9714, 3 Comp. Laws.

The acts of adverse possession relied upon by the defendant Bruneau of himself and his grantors may be condensed as follows:

Acts of Senter: May to September, 1883, and November, 1883, to March, 1884, between 700 and 800 cords of wood cut and sold to the Cliff Mine, and between 18 and 20 cords to families living at the Cliff Mine and vicinity. 1885: Between September, 1885, and March, 1886, pine timber amounting to upwards of 1,100,000 feet removed

by Thomas Nester under deed from Senter covering the entire E. ½ of section 11. 1886: 185 cords of wood cut and sold off the land. In May, 1886, the land was deeded to Albert A. Brockway as one tract.

Acts of Brockway: In 1886 Brockway cut and sold 61 cords of wood. Between March and August, 1887, he cut and sold 389 cords of wood; also sold $5 worth of hay. In 1888 he sold hay off the premises to the value of $20. In 1889 he cut and sold 15½ cords of wood, and $20 worth of hay. In 1892 sold $6 worth of hay. In 1893 sold $4 worth of hay, and 3 cords of wood. In 1894 sold 3 cords of wood. In addition to these acts, the record shows that during each year of the ownership of Brockway he cut from the land in question wood for his own use in his residence (and in his store up to 1890), and that during each of the years of his ownership he either cut or sold the hay growing on the land. During one of these years—probably 1888—Brockway went on the land with several men and cleared up a patch of ground several acres in extent, and caused it to be seeded, planting about a bushel or a bushel and a half of seed.

Acts of Bruneau: 1895: Took possession of two tons of hay which had been cut on the land by a trespasser. Removed from the land wood which had been cut by Brockway during his ownership. 1896: Cut about 75 cords of wood. 1897: Cut from 60 to 70 cords of wood. 1898: Cut hay and wood—about 60 to 70 cords. 1899: Built shanty for convenience of woodchoppers; also cut a few cords of wood. 1900: Cut about 1,000 cords of wood for Phœnix Company. 1901: Wood cut—a little less than 1,000 cords. 1902: Wood cut and sold—a little more than 1,000 cords. 1903: About 400 cords of wood cut and sold. 1904: Wood cut and sold. 1905: Deeded strip to Keweenaw Railroad Company, and received therefor $300. From 1895 to 1905 cut hay every year, with the exception of one year, when it was burned over. The shanty has been occupied, with a few intermissions,

since its erection, either by men working for Bruneau in the taking out of ties and cordwood, or by others, with his consent, who were working in the vicinity. From the year 1878 to the year 1903, inclusive, the taxes on the property in question were paid first by Senter; next by Brockway and finally by Bruneau, amounting in all to about $1,300.

The finding of the lower court was in part as follows:

"I do not understand the rule of actual occupancy to mean that the one who claims to own and occupy the premises must be upon them every month or every year, but that his use of the premises must be such as the situation of the premises, their character, their adaptability for different purposes, may require in order to show an exclusive and continued possession. The premises in question were not adapted for farming purposes. So far as the surface was concerned, almost the entire value was in the timber and wood growing upon the land. It is claimed, on the part of the complainant, that all the acts shown to have been done by Senter, Brockway, or Bruneau are mere trespasses. Had these acts been done without claim of right, that might be true, but the undisputed testimony shows that from the time that Senter recorded his deeds when.he entered upon the lands and cut and sold wood therefrom, when he deeded the most valuable part to Nester, when Nester lumbered the tract, when Brockway cut wood and sold the right to cut hay, or cut hay himself upon the tract, when Bruneau continued in the same method of dealing with the premises, each one acted in all that he did as the owner of the premises, and each act was done as the act of the owner. For more than 20 years no act of ownership was performed by the American Mining Company nor by any person in its behalf. For more than 20 years no one attempted to disturb the possession of Bruneau, Brockway, or Senter, nor questioned his right to such possession as he asserted and maintained. There can be no doubt, under the testimony, that the possession of Bruneau and his grantors was actual, visible, open and notorious, distinct and hostile. I think under the decisions in this State there can be no doubt that the possession was also continuous. Taking into account the character of the land, the neighborhood in which it was situated, the intermittent demand for its

products, I have no hesitancy in deciding that the testimony establishes that the occupation was continuous. In *Murray* v. *Hudson*, 65 Mich. 670, on page 675, the court says:

" ' The possession of land cannot be more than the exercise of exclusive dominion over it. This possession or dominion cannot be the same or uniform in every case, and there may be degrees even in the exclusiveness of the exercise of ownership. The owner cannot literally occupy a whole tract. He cannot stand upon all of it, or hold it all in his hands. His possession must be indicated by other acts; and these acts must vary according to the circumstances of each case.

" ' When one enters upon land under color of title and with claim of ownership, any acts of user which are continuous, and indicate unequivocally to the neighborhood in which the land is situated that it is appropriated exclusively to the individual use and ownership of the person making such entry, are sufficient to render the possession adverse.'

"I find that every element necessary to constitute adverse possession has been established by the testimony in this case, and that all these elements existed for more than 15 years before the beginning of this action. It follows, then, that the bill of complaint should be dismissed, with costs to the defendant Bruneau, and a decree entered quieting the title of defendant Bruneau to the lands described."

BROOKE, J. (*after stating the facts*). It is the claim of the complainant that all the acts relied upon by defendants, taken together, constituted nothing but an intermittent trespass upon the land, and cannot be held to amount to an adverse possession, as against the owner of the paper title. It is further the contention of the complainant that, because Senter acquired his apparent right to enter by virtue of two separate tax deeds from the State, one covering the N. E. ¼ and the other the S. E. ¼ of section 11, therefore it was incumbent upon the present owner to show continuous, separate, and distinct acts of dominion and locate them upon each quarter separately. We are unable to agree with this view. Where the same grantor conveys to the same grantee two separate de-

scriptions of land, contiguous to each other, by separate instruments, which are thereafter used, dealt with, and deeded by the grantee and his successors in title as one description, we are of the opinion that acts of dominion over any portion of the land covered by the entire description are referable to the whole, in any event, after the two descriptions are merged in one. In 1885 Senter by his deed to Nester conveyed as to the pine timber the entire east half of the section, and in 1886 he sold it as one parcel to Brockway. There is no doubt that under the license thus granted Nester took off all the pine timber from both quarter sections. Brockway deeded to Bruneau as one parcel in 1895. It is apparent from the record that the acts of dominion of Brockway and Bruneau in taking out ties and the cutting of cordwood were committed indiscriminately upon all parts of the east half. The principle of law controlling this case is clearly and correctly stated by the supreme court of Minnesota (*Murphy* v. *Doyle*, 37 Minn. 113), speaking through Mitchell, J., as follows:

" The general doctrine of the courts in the United States is that, where the occupant or those under whom he claims enter into possession under claim of title, founding such claim upon some written instrument as being a conveyance of the premises in question, and there has been continued occupation of some part of the land included in such conveyance, he or they will be deemed to have been in the adverse possession of the whole of such premises if not in the adverse possession of anyone else."

See, also, *Morris* v. *McClary*, 43 Minn. 348, where the court says:

" If one has a deed or color of title to one entire tract of land, as to one whole lot or farm, which is uninclosed, and he is in actual possession of a part, the remainder not being actually occupied by any one, his deed or color of title will, ordinarily, extend his possession to the entire tract for the purpose of showing adverse possession."

See, also, 1 Cyc. p. 1128, and cases there cited.

Much stress is laid upon the claim of complainant that

mere acts of trespass cannot be held to sustain a title by adverse possession. This is unquestionably true. That, however, is not this case. From the time of the entry upon the land by Senter in 1883 to the filing of the bill in this case, operations of very considerable magnitude were carried on upon the land, openly and notoriously, and under a color of right and assertion of ownership, by Senter, Brockway, and Bruneau. During that period several thousand cords of wood have been cut and sold from the property, and upwards of 1,000,000 feet of pine taken therefrom and disposed of, to say nothing of the clearing and seeding of several acres and the annual removal of hay. The record is silent as to the final disposition of the pine in question, but the cordwood for upwards of 20 years has been taken in large quantities by Senter and his successors in title, and disposed of entirely in the immediate vicinity of the property, without objection from the holder of the paper title, who, from the year 1877 to the time of the filing of the bill, seemed content to allow Senter and his grantees to continue in possession of its property under the tax deeds, which are conceded to have been invalid. The title to the entire east half of the section, from 1883 to the time of the filing of the bill of complaint, was, by local reputation, first in Senter, then in Brockway, and last of all in Bruneau. The case at bar is clearly distinguishable from *Lasley* v. *Kniskern,* 152 Mich. 244. In that case for a period of 10 years—from 1889 to 1899—the defendant, claiming title by adverse possession, did nothing whatever upon the land. This court said:

" It is not enough that a party sets up a hostile claim, and that that claim is known to the original owner. He who seeks to obtain title by adverse possession must not only have a hostile claim, but he must be able to point to a possession under it which is hostile to the original owner."

Considering the character of the land, its general unfitness for cultivation, and the fact that Senter, Brock-

way, and Bruneau, though none of them lived upon it, made such use of it as was consistent with its character and with their successive ownerships of it, we find no difficulty in agreeing with the conclusions of the learned circuit judge.

Decree affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY and OSTRANDER, JJ., concurred.