MERRITT *v.* WESTERMAN.

1. ADVERSE POSSESSION—OPEN POSSESSION—EVIDENCE—CONTINU-
ITY.

Adverse possession may be evidenced in other ways than by residing on the premises, as by making permanent improvements, or carrying on logging or similar operations, and though operations may have ceased for a time, possession is not broken if visible improvements exist and remain openly upon the premises.

2. SAME—TAXATION—PAYMENT — STATUTE OF LIMITATIONS—CON-
TINUITY.

That one in possession of lands permitted them to be assessed to a former owner, and purchased the tax titles annually, is not conclusive of his inhostile occupancy, nor did the fact interrupt the running of the statute.

3. SAME—EVIDENCE.

Such conduct is, however, admissible to show the character of the occupancy.

4. SAME—TACKING POSSESSION—LAND CONTRACTS.

Nor did the fact that he sold the land on contract to successive purchasers who forfeited their rights, interrupt the possession of the vendor, who, if he promptly took possession,

was entitled to tack onto his occupancy the possession of his vendees.

5. EVIDENCE—HEARSAY.

Entries made by the vendor of land of payments indorsed on the land contract, being hearsay, are not competent to show the nature of his possession in ejectment against his grantee.

Error to Manistee; Withey, J. Submitted February 17, 1911. (Docket No. 102.) Decided May 8, 1911.

Ejectment by James E. Merritt against Walter S. Westerman. Judgment for defendant. Plaintiff brings error. Reversed.

*Smurthwaite & Belcher,* for appellant.

*Grant & Neal,* for appellee.

HOOKER, J. The plaintiff was defeated in an ejectment case, and he has appealed. He is, admittedly, the record owner of the land in controversy so far as the original claim of title is concerned. The defendant claims title by adverse possession. This alleged possession dates from the year 1881, when one S. W. Fowler, a lawyer, is said to have put a tenant in possession of the land, and it is claimed that this possession continued in Fowler, his tenants and grantees, until defendant acquired all of their rights under it through conveyances from Fowler's representative. We understand defendant's claim to be that the adverse possession ripened into a title in 1891, or 1892, and that no claim is made that the subsequent possession was continuous, and therefore that the possession after 1892 is not relied on to establish defendant's title. The court was asked to direct a verdict for the plaintiff upon the ground that the evidence conclusively showed his record title, and that it failed to show continuous, hostile, and adverse possession in any one, for the period of 10 years after October 1, 1881.

We have examined the testimony in this case, and, with some hesitation, reached the conclusion that the court

did not err in submitting the question of adverse possession to the jury. It is true that there were periods when no one resided upon the place, and when it may be doubtful whether any logging or other lumbering operations were going on; but, on the other hand, it is claimed that such permanent and visible improvements were made and existed at all such times as must have indicated to the owner, had he seen the premises, that some one was in possession under a hostile claim, as in the cases of *Whitaker* v. *Shooting Club*, 102 Mich. 454 ( 60 N. W. 983 ); *Murray* v. *Hudson*, 65 Mich. 670 ( 32 N. W. 889 ); *Lasley* v. *Kniskern*, 152 Mich. 244 ( 115 N. W. 971 ); *Kingston* v. *Guck*, 155 Mich. 264 ( 118 N. W. 967 ); *Chabert* v. *Russell*, 109 Mich. 571 ( 67 N. W. 902 ). Possession may be evidenced in other ways than by residence on the premises.

We think, also, that there was testimony justifying an inference that these descriptions were occupied and used as one parcel, and that occupation extended to all of the land. See *Kingston* v. *Guck*, *supra*.

Plaintiff contends that the question should have been taken from the jury, and that all evidence tending to establish adverse possession should have been excluded for the further reason that Fowler's conduct in allowing the lands to be assessed to the St. Mary's Falls Ship Canal Company, and bidding them off, year after year, characterized his possession, and showed conclusively that it was not hostile, and interrupted the running of the statute of limitations.

In support of this contention, counsel cite 1 Cyc. p. 1018, where several cases are referred to. An examination of these cases will show that, in some of them, title was forfeited to the State for nonpayment of taxes, and, under the familiar rule that title by adverse possession cannot be acquired against the State, such forfeiture interrupted the running of the statute. Such are the cases of *Reusens* v. *Lawson*, 91 Va. 226 ( 21 S. E. 347 ), and *Armstrong* v. *Morrill*, 14 Wall. ( U. S.) 120, though, in the

latter case, a dissenting opinion was filed by three justices. That this is the true ground upon which most of these cases should be said to rest is indicated by the case of *Harrison* v. *Dolan*, 172 Mass. 395 (52 N. E. 513), where it was held that a sale for taxes, and a subsequent quitclaim, by the purchaser, to the disseisee, did not interrupt the possession. The court explained that the rule of the cases hereinbefore cited "could not apply, for the reason that in Massachusetts the statute runs against the Commonwealth, as well as private persons, and because, further, the Commonwealth never had even a momentary title to the land." We find it unnecessary to approve or disapprove such rule, as in this case it is admitted that all of the tax titles were void, and this State never had title under the tax proceedings. Moreover, there are many authorities which hold that "purchase of the tax title by an adverse occupant is not (necessarily) an interruption of the continuity of the possession as against the original owner," and we approve this rule. See 1 Cyc. (II) p. 1016, and cases cited.

That the conduct of the occupant in relation to assessment, payment, or nonpayment of taxes may be admissible upon the question of hostility, in some cases, is probable. See *Murray* v. *Hudson*, 65 Mich. 670 (32 N. W. 889); *Sauers* v. *Giddings*, 90 Mich. 50 (51 N. W. 265).

The record shows that Fowler sold this land upon contract on one or more occasions, and it was claimed that this was an interruption of the continuity of his adverse possession. When Fowler recovered the possession and title through forfeiture or otherwise, from his vendees and lessees, their possession may have inured to his benefit if there was no interval between the vacation by one and the occupancy by the other. Whether this possession can be said to have been continuous, within this rule, must depend on the promptitude with which Fowler asserted his claim by possessory acts. There is uncertainty as to the time that Hull vacated and Richmeyer entered, and there is no very clear testimony that anything was done mean-

time. But, had Fowler moved at once upon the place, Hull's possession might have been made to inure to his benefit through tacking; and within the rule of *Whitaker* v. *Shooting Club,* and other cases cited, if the condition of the premises was notice of a hostile occupancy, we see no reason why such possession should not carry with it the right to tack Hull's possession. By the vacation and forfeiture, Hull surrendered his rights to Fowler with all the existing evidences of occupancy. See *Vincent* v. *City of Kalamazoo,* 111 Mich. 230 (69 N. W. 501); 1 Cyc. pp. 1001, 1003, note 60, pp. 1004, 1006, subd. 4. It is said (1 Cyc. par. B, p. 983):

"Actual possession of land consists in exercising acts of dominion over it, and in making the ordinary use of it, and in taking the profits of which it is susceptible. This dominion may consist in and be shown by a great number and almost endless combination of acts, and, where the statutes of limitations have not designated certain things as requisite, the law has prescribed no particular manner in which possession shall be maintained and made manifest. Nor, on the other hand, has the law attempted to lay down any precise rules by which the sufficiency of a given set of facts to constitute possession may be determined. It is ordinarily sufficient if the acts of ownership are of such a nature as a party would exercise over his own property and would not exercise over another's. Actuality of possession is a question compounded of law and fact, and its solution must necessarily depend upon the situation of the parties, the nature of the claimant's title, the character of the land, and the purpose to which it is adapted and for which it has been used. All these circumstances must be taken into consideration by the jury, whose peculiar province it is to pass upon the question. The only rule of general applicability is that the acts relied upon to establish possession must always be as distinct as the character of the land reasonably admits of, and must be exercised with sufficient continuity to acquaint the owner, should he visit the land, with the fact that a claim of ownership adverse to his title is being asserted. Trivial and disconnected acts, doubtful and equivocal in their character, and which do not clearly indicate the intention with which they are performed, cannot be

regarded as amounting to possession; otherwise a man might be disseised without his knowledge, and the statutes of limitations might run against him while he had no ground to believe that his seisin had been interrupted."

In his testimony, defendant introduced several contracts in relation to the premises, and, if the execution of these was proved, as we understand it to have been, they were admissible; but the admission of the memoranda and indorsements of payments, etc., thereon, was hearsay and improper. The jury might naturally infer that the possession continued under the contracts as long as the payments, so shown, continued. Indeed, counsel urge this upon us in their brief. But they were no more than unsworn evidence of facts tending to show possession, and they may have been potent with the jury.

We are constrained to reverse the judgment and direct a new trial.

MOORE, McALVAY, BROOKE, and BLAIR, JJ., concurred.