MERRITT *v.* WESTERMAN.

1. ADVERSE POSSESSION—LANDLORD AND TENANT—POSSESSION.

Acts of ownership such as to openly and publicly indicate an assumed control or use of the premises, sufficiently sustain the claim of adverse possession; the occupation need not be such as to inform a ·passing stranger that the person in possession claims title, but if it would advise the owner in·case he visits the premises that the person in possession claims to hold adversely the notice is sufficient.

2. EVIDENCE—CROSS-EXAMINATION—ADVERSE POSSESSION.

Where it appeared from the proofs that the defendant's title by adverse possession was complete not later than 1897 and in 1907 the claimant entered into a contract to sell the premises, providing that $500 should be deposited in a bank to remain five years unless the cloud on the title was removed before the expiration of the period, the trial court did not commit prejudicial error in refusing to permit the plaintiff's counsel to cross-examine such witness relative to the reason for inserting the five-year limit.

3. SAME.

Where the holder of certain tax titles put a tenant into possession, claiming to own the premises, and the tenant actually occupied the house and garden mentioned in the lease, and the instrument provided that he should permit no trespass, his occupancy was enough to apprise the original owners that an adverse claim was asserted.

Error to Manistee; Withey, J. Submitted January 21, 1914. (Docket No. 45.) Decided June 1, 1914.

Ejectment by James E. Merritt against Walter S. Westerman. From a judgment for defendant, plaintiff brings error. Affirmed.

*Smurthwaite & Belcher,* for appellant.

*Max E. Neal,* for appellee.

KUHN, J. This cause has been before this court before and is reported in 165 Mich. 535 (131 N. W. 66), where the facts are sufficiently stated for a proper understanding of the issues involved. Being sent back for a new trial, it again resulted in a verdict and judgment for the defendant. The plaintiff brings the cause to this court by writ of error and claims that the testimony was insufficient to show adverse possession and that in the submission of the case to the jury and in the rulings and charge of the court there were material and prejudicial errors.

The first five assignments of error relate to the claimed legal proposition that, when a party claims an entry upon land on a date certain and under color of title, it is not competent to prove adverse possession after the expiration of limitation provided by the statute. The first alleged possession dated back to 1881, when S. W. Fowler, a lawyer, under color of a tax deed, put a tenant in possession. The circuit judge submitted the case to the jury both upon a claim of ten years' possession under color of title of the tax deed and also under claimed possession for fifteen years. With reference to this, he charged the jury, in part, as follows:

"It must be a continuous possession. And that, gentlemen, is the crucial question in this case I think, the closest question in the case on the testimony. It must be a continuous possession, in this case, for at least 10 years. Mr. Fowler owned these tax titles. If he went into possession of this land through Mr. Hull, claiming to own the land under his tax titles, and possession of the character which I am describing to you for 10 years consecutively would create a valid paramount title by adverse possession. If he did not go in claiming title under the tax deeds, then his possession must be of the same character for a period of 15 years before title by adverse possession will ripen and defeat the other title. The fact that these tax titles and tax claims were found afterwards to be void and worthless and of no force as

deeds would cut no figure in this case. You may lay that question aside and not discuss it nor refer to it, because the law provides that when a man receives a deed of land from the State and goes into possession claiming to own it under that deed, and stays there and is adversely possessed of it in the way which I have described for 10 years, his title is good against everybody. And it does not make any difference that the deed is afterwards found to be void. But if he did not enter claiming under these tax deeds, but just entered without right and without claim of right, through Mr. Hull, then his possession, adverse possession, with all its constituent elements, must obtain for 15 years instead of 10 in order to make this title paramount and defeat the other title."

It is appellant's claim that there is only one theory in this case, viz., that the entry was under the tax deed as color of title, and that under this claim there was but one period of limitation, 10 years, by virtue of the statute. Section 9714, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14119). The court permitted the defendant to offer testimony as to possession 18 years after the entry. It is claimed that, if the color of title is abandoned, then the defendant could claim only that part of the tract actually occupied, and there is nothing to extend the occupancy to the boundary of the land described in the deed. The so-called Richardson lease, dated January 26, 1889, it is claimed, limited the occupation to the house and garden. It reads as follows:

"MANISTEE, Jan. 26, '89.
"Be it remembered that George Richardson has rented the house and garden on place Richmeyer had on section seven, twenty-two, fourteen, for the improvements he made on the house and place, to live in until May, 1890, subject to sale by said Fowler. That he is to leave his improvements and they do and are to belong to the premises, but in case of sale, and he has to move and before time, he is to have his proportion of lumber paid back by purchaser, and he will

permit no trespass nor cut any green or valuable trees or timber.

"GEORGE RICHARDSON.

"He may cut the maple tree, one tree back of the house if he sees fit to do."

On the back of this lease there is indorsed in the handwriting of Mr. Fowler:

"Leased to George Richardson, house on Sec. 7, 89."

This question was discussed in the briefs filed in the case when it was here before, and it seems to have had the consideration of the court, as the opinion says, page 537 of 165 Mich. (131 N. W. 66):

"We think, also, that there was testimony justifying an inference that these descriptions were occupied and used as one parcel, and that occupation extended to all of the land."

By the terms of the lease, while he only occupied the house and garden, as to all but Fowler he was in possession of the entire premises, as by its terms it was his duty to "permit no trespass," and this must be construed to refer to the Richmeyer place, which, it is conceded, is the land here in controversy. The actual occupation of the house and garden together with his duty to prevent trespassing was sufficient to fully apprise the original owners, had they been in view of the premises, that adverse claims were being asserted to the entire tract. The occupancy in the instant case comes within the rule announced in *Murray* v. *Hudson*, 65 Mich. 670, 673 (32 N. W. 889), where it was held that:

"It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question."

In *Whitaker* v. *Shooting Club*, 102 Mich. 454, 459 (60 N. W. 983), this court said:

"The occupation need not be such as to inform a passing stranger that some one is asserting title. If it be such as to notify and warn the owner, should he visit the premises, that a person is in possession under a hostile claim, it is sufficient."

We cannot therefore see how it was prejudicial to the plaintiff to have submitted to the jury the question of adverse possession for the period of 15 years. *Cook* v. *Clinton*, 64 Mich. 309 (31 N. W. 317, 8 Am. St. Rep. 816). An examination of the testimony in this case as to adverse possession shows that it was substantially of the same character as on the previous trial. We would not be warranted, therefore, in coming to a different conclusion than was had in that case, viz., that it was not error to submit the question of adverse possession to the jury. *Merritt* v. *Westerman, supra,* and cases cited.

The lands were conveyed to the defendant by Isaac N. Hilliard on April 8, 1907. On April 10, 1907, Hilliard and the defendant entered into a contract which provided that as the parties had theretofore entered into a contract for the sale of the land and the remaining 40 acres of the same quarter section, and that as an interest in said lands was claimed by the plaintiff herein, as agent for another person, $500 of the purchase money was to be deposited in a bank, to remain there for a period of five years unless the cloud upon the title was removed before that period. This contract was admitted in evidence to show the interest of the witness Hilliard in the subject-matter of the litigation. He was asked on cross-examination why the period of five years was mentioned in the contract, and the court did not permit an answer. It is urged that this was error, as it was proper to show this as bearing upon the question of the defendant's good faith. The title of the defendant, if perfected at all, was completed in 1891, under the ten-year period, and in 1896, under the fifteen-year period and

the contract in question was entered into several years later. The contract does not disclose any waiver or nonclaim of his own title by adverse possession on the part of Hilliard or on the part of Westerman. We do not think that limiting the cross-examination was prejudicial error under the circumstances of this case.

We are satisfied that the case was fairly tried and submitted to the jury with a proper charge, and the judgment is therefore affirmed.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.