*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHADOW WOODS SUBDIVISION
ASSOCIATION,

Plaintiff/Counterdefendant-Appellee,

v

DEAN MANDO and CLAUDIA MANDO,

Defendants/Counterplaintiffs-
Appellants.

UNPUBLISHED
November 30, 2023

No. 363651
Oakland Circuit Court
LC No. 2020-182764-CZ

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Defendants/counterplaintiffs appeal as of right the order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to plaintiff/counterdefendant in a boundary dispute. On appeal, defendants argue that the trial court erred in granting summary disposition and dismissing their counterclaims because: (1) the use of the subject area by the previous homeowners can be tacked to defendants' use to establish their claim of adverse possession; (2) defendants produced evidence to establish a genuine issue of material fact regarding the hostility required for a claim of adverse possession; and (3) the evidence presented also establishes defendants' counterclaims of acquiescence and easement by prescription. We reverse and remand to the trial court for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a nonprofit corporation for the promotion and protection of the interests of residents in the Shadow Woods Subdivision. Defendants are owners and residents of a home in Shadow Woods Subdivision, located at 461 Timberline Drive. Defendants purchased the property from William Gross and Kimberly Gross on December 19, 2008. The property is subject to deed restrictions, which dedicate common areas, conveying "to each Owner a right and easement of enjoyment in and to the Common Area."

In the spring of 2018, defendants retained a contractor to construct a stone firepit structure, which included a surrounding patio and walled bench, near the rear boundary line of their property.

Approximately a year later, plaintiff's board of directors requested that defendants submit a permit, plan, or survey to verify the stone firepit structure was located entirely within defendants' property. Defendants did not comply with the request. The firepit structure and property was surveyed by a surveyor retained by plaintiff, and found to be located, for the most part, outside of the rear boundary line of defendants' property and encroaching on Shadow Woods Park, a common area of the subdivision. Plaintiff requested removal of the structure and restoration of the subject area.

After making this request, plaintiff filed its complaint for injunctive relief and damages against defendants, claiming that the firepit structure encroached and trespassed on the common area and defendants failed to remove it after notice and demand from plaintiff, in violation of the deed restrictions. Defendants answered, claiming that a firepit existed in the area of the current stone firepit structure for at least 15 years before plaintiff demanded the removal of the stone structure. Defendants also counterclaimed, alleging that "the area that is the subject of this matter has been cleared and used as part of the Mando property for a period exceeding 15 years." Defendants brought claims to quiet title by acquiescence and adverse possession, and for a prescriptive easement. Defendants argued: (1) the subject area was established as a firepit area when defendants purchased the property, (2) they always believed it to be part of their property, and (3) they used and maintained it as such. Defendants additionally contended that the use of the subject area was exclusive to the owners of their home during the prior 15 years.

During his deposition, Dean Mando testified that it was his understanding "the boundary was the treeline in the back of the house." When asked further about why he believed he owned the disputed subject area, Dean Mando answered:

> It has always been in my care; it has always been maintained by me. When trees fall in that area or on the property in general, it is me to clean it up, no one else. It has always been in my use for entertainment and use of the fire pit, and there—if you stand out there, there is no reason to think that it is anything but mine.

Dean Mando also stated that he knew about the state and use of the subject area during the three years immediately before purchasing the property because he saw pictures "the Grosses had left at closing, which pictured the fire pit at the time," and because of information shared by his neighbors. When asked about what existed in the subject area when he purchased the property, Dean Mando stated:

> *A.* I recall the fire pit, some stumps, maybe, that looked like cut logs to me that were used as seats and chairs presumably around the fire pit, and that's about all that was back there.

> *Q.* When you make reference to a fire pit, can you tell me what you mean by that?

> *A.* Fire pit was a dug out hole in the ground, there looked to be steel ring inside of it, and then large rocks or small boulders, whatever you might call it, which surrounded that to make the ring around it.

Dean Mando went on to say that he and his family used the firepit "[s]everal times a month," from the time they purchased the property to 2018, when they began using the new structure that he contended was built in the same location.

After taking Dean Mando's deposition, plaintiff obtained an affidavit by William Gross, which stated, in pertinent part:

> 3. I am aware of a circle of natural rocks that was located near the rear of the 461 Timberline Drive property. . . . Our attempts to use the circle of rocks for a recreational fire were thwarted several years prior to selling our house when we received notice from the City of Rochester Hills that such use was prohibited. The circle of rocks were never imbedded in the ground.

> 4. After receiving notice from the City of Rochester Hills we only built fires in a portable metal container designed for recreational fires that could be moved from our home to the back yard. At no time did we use the common area that borders the rear of the 461 Timberline property for recreational fires.

> 5. I am an attorney licensed to practice law in the State of Michigan and I am familiar with the legal concept of adverse possession. During the entire period of our ownership of the 461 Timberline Drive property it was never my wife Kimberly nor my intention to claim any part of the common area at the rear border of the property as our own through adverse possession or otherwise.

Plaintiff moved for summary disposition of its claims and defendants' counterclaims under MCR 2.116(C)(10). Plaintiff argued that because defendants failed to produce evidence the Grosses used the subject area, and because the presence of any firepit in the area was not actual, visible, open, notorious, or hostile before the 2018 construction, no genuine issue of material fact remained to save defendants' defenses and counterclaims.

In response to plaintiff's motion, defendants produced affidavits by Dean Mando, Claudia Mando, and Edward Pennington, defendants' next-door neighbor. Also attached to defendants' affidavits and their response to plaintiff's motion are photographs defendants claim were supplied by William Gross, and show a ring of rocks in the backyard area near two trees. Defendants compared these photographs to a photograph of the stone firepit structure, situated near two trees that could be the same trees present in the Gross photographs, stating: "The firepit is in the same location as the ring of rocks, in front of the same small tree." Pennington's affidavit states that he lived at the house adjacent to 461 Timberline Drive since 1989. Pennington stated that the subject area, which he called the "firepit area," had been "exclusively and continuously used and maintained by the Mandos and all of the prior owners of the [461 Timberline Drive] Property," at least since he purchased his home.

In their brief in response to plaintiff's motion, defendants argued that the issue concerned the maintained area surrounding and including the firepit, not the firepit alone. Because defendants and the previous owners continuously and exclusively used this area, up to a natural tree-line boundary, as part of their backyard for over 15 years, the area was acquired through adverse possession, regardless of their intent. Defendants also argued that they were entitled to the subject

area through acquiescence to the boundary line by plaintiff. Alternatively, defendants argued that they established an interest in the subject area through prescriptive easement.

At a hearing, the trial court stated that it viewed William Gross's affidavit as materially damaging to defendants' claims because it indicated that the Grosses did not use the common area for recreational fires. The trial court also cited William Gross's testimony that he and his wife did not intend to claim any part of the common area as their own, stating: "[I]t has to be open, notorious and he's specifically saying he wasn't doing that." Defendants responded that denial of fire-building did not equate with denial of use of the area as part of the Grosses' backyard, and that the intent of the Grosses was irrelevant. The trial court rejected these arguments, stating:

> I find no evidence that rises to the level of adverse possession. I have an affidavit from the previous owner saying specifically they were not using that property. They're not claiming that property as their own. Yes, they placed some rocks there. They certainly weren't using those for years before. They sold the house, just the placement of rocks (indiscernible) rises to the level of adverse possession; therefore, I am granting plaintiff's motion.

Thus, the trial court granted plaintiff's motion for summary disposition, dismissed defendants' counterclaims, and ordered defendants remove "all encroaching structures and materials within ninety (90) days."

Defendants moved for reconsideration, which the trial court denied. This appeal followed. In a stipulated order, the trial court stayed the removal of the firepit.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Van Elslander v Thomas Sebold & Assocs, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012) (quotation marks and citation omitted). A court's decision whether to grant injunctive relief also is reviewed for an abuse of discretion. *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014).

We review de novo the proper interpretation of restrictive covenants involving real property. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008). Because an entity's validly promulgated bylaws constitute a binding contractual agreement between the entity and its members, *Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015), we interpret bylaws using the same rules applied to contract

interpretation, *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). The proper interpretation of a contract is a question of law, which we review de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). A claim for adverse possession is equitable in nature and reviewed de novo. See *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007).

## III. ANALYSIS

Because there remained questions of material fact regarding the nature of defendants' and the previous homeowners' use of the subject area, including its notorious and hostile nature, the trial court erred in dismissing defendants' counterclaims. Because the counterclaims were defenses to plaintiff's claims, the trial court also erred in granting summary disposition to plaintiff.

When a restrictive covenant is unambiguous, it must be enforced as written. *Johnson Family*, 281 Mich App at 390. The deed restrictions unambiguously convey "a right and easement of enjoyment in and to the Common Area," to every property owner in the subdivision, which "shall pass with the title to said lots whether or not specifically set forth in deeds of conveyance of the said lots." Further, it is the unambiguous duty of plaintiff's Board of Directors to "[c]ause the Common Area and all other areas and property under the jurisdiction of the Association to be improved, maintained, and preserved . . . ."

Title to the common area is vested in plaintiff in the deed restrictions. However, as MCL 600.5801 states, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

Subject to exceptions, which do not apply here, this period of limitations is 15 years. MCL 600.5801(4).

To establish a claim of adverse possession, a party must produce "clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years." *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993). The 15-year period begins at the time the original owner is disseized of the land. MCL 600.5829(1). "Disseizin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021) (quotation marks and citation omitted). The acts of possession necessary to support a claim of adverse possession must be sufficient to, if observed by the owner, clearly apprise them that an adverse claim is being made. *Davy v Trustees of Protestant Episcopal Church for Diocese of Mich*, 250 Mich 530, 533-534; 231 NW 83 (1930). In addition, a party claiming adverse possession must also show their actions were "hostile" and under "claim of right," meaning the use is "inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (quotation marks

and citation omitted). To change a permissive use, like that which all property owners in the subdivision are entitled to concerning the common areas, into an adverse use, a claimant must make a distinct and positive assertion of a right hostile to the rights of the owner; and this assertion must be brought to the owner's attention. *Taylor v S S Kresge Co*, 326 Mich 580, 589; 40 NW2d 636 (1950).

Preliminarily, there remains a question of fact regarding the location of the original firepit. Defendants testified that it was in the exact location of the current firepit, and Pennington alleged that the "firepit area" was "exclusively and continuously used and maintained" since 1989. William Gross averred that the original firepit was "near the rear" of the property and he used a portable container for fires, which photographic evidence potentially indicates occurred in or near the location of the rock ring firepit. However, Gross made the potentially contradictory statement: "[A]t no time did [the Grosses] use the common area that borders the rear of the 461 Timberline property for recreational fires." Because there is no indication in the record that Gross was aware of the surveyed boundary line at the time he made his statements, this contradiction is only potential, and "the record . . . leaves open an issue upon which reasonable minds might differ" regarding the historic location of the firepit. *West*, 469 Mich at 183.

Plaintiff focuses its defense against defendants' counterclaims in arguing that there remains no question of material fact that defendants' and the Grosses' use was not sufficiently notorious and hostile for the required 15 years. Turning first to notoriety, plaintiff argues that even if the firepit that existed before the 2018 construction was located in the common area, it did not constitute sufficiently notorious use because it was merely a ring of natural stones placed in a circle. Adverse possession requires the true owner either "have actual knowledge of the hostile claim or the possession be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally." *Burns v Foster*, 348 Mich 8, 15; 81 NW2d 386 (1957) (cleaned up). In other words, the use must be so open, visible and notorious as to be equivalent with notice to the persons living in the community that the land is "appropriated exclusively to the individual use and ownership." *Murray v Hudson*, 65 Mich 670, 675; 32 NW 889 (1887). It is not necessary that the land be resided on, built on, fenced, cleared, or cultivated; rather, it is sufficient if the acts of ownership are of such character as to openly and publicly indicate control or use consistent with the character of the disputed property. *Id*. at 674-675.

On point to this specific inquiry is the testimony of Pennington, who has resided on the property adjacent to defendants' home for the entire period in question. Pennington specifically averred that the firepit area was "exclusively and continuously used and maintained by the owners of the [461 Timberline Drive] Property" during his residence in the neighborhood. This testimony, and Pennington's statement that he believed the subject area was part of the 461 Timberline Drive property, provides evidence of the type of notice required of possession notorious enough to support a claim of adverse possession. *Id*. at 675. William Gross's contentions that any metal ring or rocks were not imbedded, or that he did not use the common area for recreational fires, do not negate the evidence that whatever the appearance of the old structure, or however the Grosses were using the subject area, a member of the neighborhood believed the subject area to be "appropriated exclusively to the individual use and ownership." *Id*. Again, acts of ownership in support of adverse possession need only be of such a character as to publicly indicate control or use consistent with the character of the disputed property. *Id*. at 674-675. Because yard maintenance and

arrangement of natural features, alone, arguably are indicative of control and use of an area believed to be part of one's backyard, the lack of a more permanent structure before 2018, and whether the Grosses built fires there during the pertinent period, are not dispositive in establishing a question of fact regarding notorious use for the entirety of the statutory period.

Turning to the question of hostility, this Court has considered whether the intent to hold a line believed to be a boundary, which is not in fact the true boundary line, can qualify as hostile, and establish adverse possession, in *DeGroot v Barber*, 198 Mich App 48; 497 NW2d 530 (1993):

> In our view, [there is a] distinction [] between (1) failing to respect the true line, while attempting to do so, and (2) respecting the line believed to be the boundary, but which proves not to be the true line. Thus, in *Warner* [*v Noble*, 286 Mich 654, 282 NW 855 (1938)], the parties missighted along survey stakes in locating the boundary line before the building of a cottage, which proved to encroach on the neighboring lot. The Court concluded that there was no adverse possession inasmuch as the parties intended to hold to the true line. That is to say, they failed to respect the true line while attempting to do so and, therefore, there could be no adverse possession. An example of the second principle enunciated above, that adverse possession is established where the intent is to claim title to a visible, recognizable boundary, is illustrated in *Connelly* [*v Buckingham*, 136 Mich App 462; 357 NW2d 70 (1984)]. In *Connelly*, the defendants claimed ownership of property to a fence line, apparently under the mistaken belief that the fence accurately depicted the boundary between their property and the plaintiff's property. In fact, approximately 627 square feet over which the plaintiff held title was located on the defendants' side of the fence. The trial court concluded that defendants had established title by adverse possession, and this Court affirmed. Thus, adverse possession by the defendants was established despite the fact that they were respecting the line believed to be the boundary, but that proved not to be the true line. [*DeGroot*, 198 Mich App at 52-53.]

Because the plaintiffs in *DeGroot* believed a road represented the true boundary of their property, and claimed ownership to the disputed parcel under this belief, this Court found that case fell within the second principle. *Id*. at 53. Because the landowners intended to "claim title to a visible, recognizable boundary," respecting the line they "believed to be the boundary but that proved not to be the true line," the trial court did not err in finding the possession was under claim of right. *Id*.

Recently, this Court elaborated on the *DeGroot* analysis:

> The Court's discussion somewhat blended or intertwined the states of mind regarding "intent" and "belief," and we now make clear that they are not one and the same for purposes of analyzing a claim of adverse possession and the element of hostility. In *DeGroot*, the plaintiffs *intended* to claim title or hold to a visible, recognizable boundary *and believed* that the boundary was the true line. But this does not mean that such intent and belief must be established to show hostility— just the contrary. A party seeking to prove hostility need only demonstrate an intent to hold to a visible, preexisting, and recognizable boundary, and if there is evidence

that the party did not believe that the boundary was the true line, it would make his or her case stronger because it would reflect true hostility. In that scenario, the party pursuing adverse possession would be indicating that he or she intended to hold to a visible, recognizable boundary regardless of or not caring whether it was the true line. Failure to show "belief" one way or the other does not doom a claim of adverse possession so long as there existed an intent to hold to a visible, recognizable boundary. *DeGroot* simply stands for the proposition that a party who does believe that the boundary is the true line is as entitled to claim adverse possession as the party who does not have that belief. [*Houston*, 335 Mich App at 563.]

This Court also has stated that the interests of justice dictate that hostility can be established in a case when a recognizable boundary, believed to be the true boundary, is held because "it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake[.]" *Gorte v Dep't of Transp*, 202 Mich App 161, 170; 507 NW2d 797 (1993).

Simply put, "[a] party seeking to prove hostility need only demonstrate an intent to hold to a visible, preexisting, and recognizable boundary," regardless of whether they believed the boundary to be the "true boundary." *Houston*, 335 Mich App at 563. Because of this principle, the trial court's reliance on William Gross's avowal that "it was never my wife Kimberly nor my intention to claim any part of the common area at the rear border of the property as our own through adverse possession or otherwise," to resolve the hostility question in favor of plaintiff was in error. The relevant question is not whether the Grosses intended to claim a portion of the common area, but whether they intended to hold a recognizable boundary—the same tree-line border discussed by defendants—as the property line, as manifested by use of the subject area as part of their backyard. Importantly, William Gross's statements do not make clear whether he is aware of the location of the "actual" property line, and defendants note correctly that if William Gross made his statements believing the tree line was the property boundary, his affidavit would support their position. So, there remains a question of fact whether both owners believed the tree line to be the property boundary, making any of their use of the subject area under claim of right, or hostile to plaintiff's ownership. If the conception of the boundary and use of the subject area as a backyard by the owners has not changed for 15 years, a distinct assertion of hostility, *Taylor*, 326 Mich at 589, which plaintiff argues occurred with the 2018 construction, is not necessary to establish adverse possession. The continuous use, maintenance, and occupancy of the subject area as a backyard, alleged by defendants, is "inconsistent with the right of [plaintiff], without permission asked or given," *Wengel v Wengel*, 270 Mich App at 92-93 (quotation marks and citation omitted), and a question of fact of hostility remains.

Further, the imprecision of defendants' description of the subject area does not alone necessitate summary disposition, as plaintiff contends. Dean Mando described the boundary of the subject area as "where the natural grass is growing and where it turns into leaf-covered woods," and while this is by no means a precise description, it is not inconsistent with defendants' contentions that "the backyard of the Property has not changed in size" since they purchased the property, or that they had "maintained the [subject area] with the understanding that it was part of the Property." Moreover, defendants' imprecision in describing the property is not necessarily an indication that they would not be able to produce a legal description of the subject area they were

claiming before trial. Because the court must consider evidence in the light most favorable to the nonmoving party, MCR 2.116(G)(5), summary disposition on the basis of defendants' failure to provide a legal description of the area claimed is improper.

Turning briefly to defendants' other counterclaims, a claim of acquiescence requires a showing that adjoining property owners treated a boundary line as the property line for 15 years. *Walters v Snyder*, 239 Mich App 453, 456-457; 608 NW2d 97 (2000). Acquiescence does not require the establishment of hostility. *Id.* at 457. Because a question of material fact remains regarding the location of the original firepit and the open and notorious nature of the homeowners' possession of the subject area for the 15-year period, defendants' acquiescence counterclaim also survives summary disposition.

An easement by prescription requires similar elements to adverse possession, except for exclusivity. *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995). In other words, "[a]n easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 118; 662 NW2d 387 (2003). Again, because a question of material fact remains regarding the location of the original firepit, and the notoriety and hostility of the homeowners' possession of the subject area during the 15-year period, defendants' prescriptive easement counterclaim survives summary disposition. Further, because all three improperly dismissed counterclaims were defenses to plaintiff's claims, the grant of summary disposition to plaintiff was in error.

## IV. CONCLUSION

Because there remained questions of material fact regarding the nature of defendants' and the previous homeowners' use of the subject area, including its notorious and hostile nature, the trial court erred in dismissing defendants' counterclaims. Further, because the counterclaims were defenses to plaintiff's claims, the trial court also erred in granting summary disposition to plaintiff. Therefore, we reverse and remand to the trial court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett