JAMES S. TAYLOR AND ANOTHER *vs.* THE DANBURY PUBLIC HALL COMPANY.

In 1785, the county court by a committee, under a statute then existing, established a part of a public highway in *D* as the site of a church to be erected by the society in *D*, who had petitioned the court for the purpose. The church was immediately after built and occupied as such until 1859, when it was sold by the society, with the land upon which it stood, to the defendants; and was thereafter used for secular purposes. ·At the time of its erection it was the prevailing opinion that the fee of highways was vested in the public ; religious societies were also at that·time public corporations with territorial limits, required by law to maintain houses of public worship and empowered to levy taxes for 'that purpose. Held that, in view of these circumstances, and of the fact that the society was about to erect a permanent structure to be used an indefinite length of time, it must be regarded as having entered into possession of the property as its own and occupied it adversely to all others.

In 1837, the society took a quit-claim deed of the ground occupied by the building from one who was supposed to have the sole adverse interest in the same which deed, (for reasons not necessary to be stated), conveyed no title. The deed was immediately put on record. Held that this deed, though it conveyed no title, yet characterized the possession of the society and rendered it an adverse possession against all the world from that date, even if it had not been such before.

Where land was conveyed by a warrantee deed to a town "for the sole use and purpose of a public highway," it was held that the deed conveyed more than an easement, and that so long as the premises continued to be used for a highway the town had a complete title to the fee of the land.

EJECTMENT, to recover the possession of a piece of land, originally a part of a highway, in the town of Danbury, tried to the jury in the Superior Court on the general issue before *Pardee, J.* Verdict for the defendants, and motion for a new trial by the plaintiffs. The case is sufficiently stated in the opinion.

*Taylor* and *Todd,* in support of the motion.

*Averill* and *Brewster,* contra.

CARPENTER, J. This is an action of ejectment brought to try the title to certain premises, the chief value of which consists in the building thereon standing. The building was erected about the year 1785, by the First Society in Danbury, as a house of public worship, on a site designated for that purpose by the county court, and which lies wholly within the limits of the highway—the north line of the house being on the north line of the highway. In 1792 the adjoining proprietor sold and conveyed to the town a piece of land immediately north of the building, "for the sole use and purpose of a public highway," which has ever since been and now is used for that purpose. In 1801 the highway at this point was widened by the county court, and for that purpose a narrow strip of land was taken, northerly of and adjoining the piece of land conveyed to the town.

The plaintiffs now claim to be the owners of the land north of the highway as thus established, and in virtue of such ownership claim to own the fee in the land to the center of

the original highway; thus embracing in their claim the premises in dispute. The building was used as a church edifice until 1859, when the society removed their place of worship, and sold the premises to the defendants.

The plaintiff's title to the premises north of the highway is evidenced by a deed from Francis H. Austin, who, so far as appears, was at that time the undisputed owner, to James S. Taylor, one of the plaintiffs, as administrator on the estate of Hiram L. Sturtevant, deceased, the other plaintiff being his co-administrator on that estate. It does not appear that the deed was taken in payment of any debt due to the estate, nor pursuant to any order or decree of the court of probate. Under these circumstances the defendants claim that the plaintiffs acquired no title by the deed. We do not deem it important to consider this question, and do not wish to be understood as expressing any opinion thereon, as we are all satisfied, for other reasons, that the plaintiffs have no title to the *locus in quo*.

Conceding that the deed conveyed to the plaintiffs, or one of them, a good title to the premises therein described, it by no means follows that they own the fee to the center of the original highway. The deed of 1792 to the town, from parties under whom the plaintiffs claimed, is a warrantee deed in the usual form, except that it limits the use of the premises as above stated. This deed conveys something more than an easement. Whatever effect ought to be given to the limitation under other circumstances, so long as the premises continue to be used for a highway the town has a complete title, in the enjoyment of which it cannot be disturbed, not only to a right of way, but to the fee of the land. If by any contingency that title can be defeated, it is certain that no such contingency has yet arisen. This being so, the grantors of the town parted with their title to the original highway, and the subsequent conveyances, constituting the plaintiffs' chain of title, conveyed to the plaintiffs no title to the land in controversy. The plaintiffs, having failed to establish their title, cannot maintain this action.

But we do not rest the case on this ground alone, as we are

all satisfied that the case shows a good title in the defendants.

The motion further finds " a continuous, exclusive and uninterrupted possession" in the defendants, " by themselves and their grantors, the said congregational society, of the premises in question, from the time the meeting house was built to the present time. " The defendants requested the court to charge the jury upon this part of the case, " that after an uninterrupted possession of eighty years a grant in fee is to be presumed in the absence of proof to the contrary, and that the fixing of the stake by the county committee, and subsequent use of the premises in question as a meeting-house, of themselves do not rebut that presumption : " and the court charged the jury as requested. This part of the charge is complained of, and that presents for our consideration the question whether the defendant's grantors acquired a prescriptive title to the premises. In the argument the counsel on both sides assumed that the action of the county court, of itself, conveyed no title in fee to the land ; but the defendants claim a possessory title, and the plaintiffs claim that the society, having entered into the premises by authority of law, thereby acknowledged the title of the plaintiffs' grantors, and held possession in subordination thereto, whereby all presumption of a grant was repelled and the acquisition of such title prevented. Their theory is that the proceedings in the county court in their legal effect operated as a license, or as a lease for a specific purpose, to the society.

The statute on this subject then in force was as follows : " Every such parish or society shall apply to the county court wherein such parish or society or the greater part thereof is situate, to appoint and affix the place whereon their meeting house shall be erected or built ; and the county courts in the respective counties are hereby authorized and empowered to hear all concerned and take proper measures for affixing such place ; and to appoint, order and affix the place whereon their meeting house shall be erected and built." Statutes, ed. 1769, page 153 ; also ed. 1784, page 143.

The record of the proceedings in the county court is brief.

It seems that a committee was appointed to " fix and erect a stake where a meeting house, or house of public worship, should be erected, &c." The record then finds that the committee "pitched upon the following place for said stake, and fixed the same accordingly, viz: at a place called the mouth of the lane, a little north of the parsonage house in said Danbury." This report was accepted, and the house ordered to be erected at the place therein designated.

The statute and the record of the court are silent in respect to the quantity of interest which the society should take in the land. There is no formal conveyance to the society, either from the town or the adjoining proprietors. The record therefore affords us little aid in determining whether it was intended that the society should take an absolute title or a less interest. We must look then to the legal *status* of the property, the nature and character of the party who was to occupy it, together with the attending circumstances, and the purposes for which it was to be occupied, in order to form a just conception of the understanding of the parties concerned in respect to the interest which the society took.

In the first place, the title to the land within the limits of the highway was in doubt. It was supposed that the common law vested it in the adjoining proprietors. This was doubted by some, and many claimed, even if it was so, that the common law in this respect was not applicable to the circumstances of this country. The prevailing opinion however seems to have been, that not only an easement, but the absolute title in the highway, vested in the public; and it was not until 1814, in the case of *Peck* v. *Smith*, 1 Conn., 103, that it was fully settled that the title to the highway vested in the adjoining proprietors. Even in that case the court was divided; some of the judges holding that the fee of the highway was in that community on which was the burden of maintaining the highway.

In the second place, the society was not then regarded as a private corporation, but was a public corporation with territorial limits, as much so as towns. Every legal voter within those limits was a member of the society, *nolens volens*. The

society was required by law to erect and maintain houses of public worship, and for that purpose taxes were levied and collected, the same as for other public purposes. The distinction in the public mind between taking land for a highway and for public worship was not a very material or important one. The duty of taking it for both purposes, as well as incurring other expense, was imposed upon the public by legislation, upon the town in the one case and upon the parish in the other. After land had been taken for a highway it was considered that that portion of it not needed for actual travel might with propriety be set apart for public worship. Hence buildings for that purpose were usually erected within the limits of the highway. As the title was supposed to be in the public, the adjoining proprietors were not regarded as having any interest in it, and were not made parties to the proceedings. No provision was made for compensation to them, as there would have been had it been supposed that it was taking private property for public use. If private property was taken outside of the limits of the highway, as is usually done at the present day, it must have been understood that the society would acquire title from the owners by regular conveyance. No such conveyance appears in this case, and the presumption is strong that individuals were not considered as in any way interested.

In the third place, the purposes for which this land was wanted would not have been answered by an ordinary lease for a term of years, nor by a license revocable at pleasure, nor even by a restricted and qualified title. The society were about to erect a permanent structure, to be used an indefinite length of time as a house of public worship, and which was actually used for that purpose for nearly three quarters of a century.

They must have contemplated and intended that the building about to be erected should remain there permanently, and we must presume that they, and all others concerned, regarded their title to the land as equally permanent and enduring. They doubtless contemplated, as a possible event at least, that in process of time they might desire to change

their place of worship; but we see nothing in the case to indicate that, in such a contingency, they expected, either to forfeit the building to other parties, or to be compelled to remove it to another location. Had their title been thus restricted, or their right to use the property thus limited, it is reasonable to suppose that some evidence of it in writing could be found at the present day. In the absence of any such evidence, without any suggestion that it ever existed, the conclusion is irresistible that it never did exist. On the other hand it may be safely presumed that they considered their possession as founded upon a right which no one could ever call in question.

Considering the somewhat permanent nature of the use to which this property was to be put; the fact that the party thus using it was a part of the public, and took it for public use; that the title was then regarded as being in the whole public, and that it was set apart for this purpose by the agents of the public, in conformity to law, we have no difficulty in arriving at the conclusion that the society entered into possession of the property as their own, and occupied it from that time onward as their own, adversely to, and to the exclusion of, the rights and claims of all others.

The possession thus commenced continued without interruption, and without interference from any source, until 1837; although, in the mean time, the law in respect to highways had become settled and well known, and the adjoining proprietors must have been advised as to their legal rights; and although the adoption of the constitution had changed somewhat the character of the society as a corporation, and the use of the premises had, in a certain sense, ceased to be public, and had become in its nature private.

In 1837 the society took a deed of the disputed premises from Asel Benedict, who, the case finds, was at that time the sole surviving heir of Asel, Abigail and Mabel Benedict, who owned the adjoining premises on the north in 1804, and under whom the plaintiffs now claim title. That deed was immediately put on record, and was a declaration to the whole world that from that time they owned the property absolutely

and occupied it exclusively as their own and in hostility to every other title. Admitting that that deed of itself conveyed no title, nevertheless its legitimate effect was to characterize the possession, and show that it was under a claim of right after that time, whatever may be said of the character of the possession before. As that possession had continued for more than fifteen years prior to the commencement of this suit, we think it satisfactorily appears that the defendants had a perfect title to the land in question.

This view of the case renders it unnecessary to examine particularly the charge of the court in all its parts, as we are satisfied that justice has been done and that a new trial must be denied.

In this opinion the other judges concurred.