JAMES F. TIERNEY vs. THE SECOND ECCLESIASTICAL
SOCIETY OF NORTH CANAAN ET AL.

*Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

In 1877, the plaintiff acquired title to a tract of land described in
his deed as bounded "easterly and southerly on highway." In
the present action, he claimed that this deed likewise included
a triangular strip situated on the opposite side of the highway.
*Held* that since neither the deed in question nor any other con-
veyance in his chain of title, dating back to 1775, described the
easterly portion of the premises as bisected by a highway,
or purported to convey two parcels of land, there was no reason-
able or possible basis for his claim of title by grant; and that
he had likewise failed to establish title by adverse possession.
The existence of a fence along the highway on the easterly side of
the plaintiff's premises tended to identify and locate the easterly
boundary as the highway described in the deed.
Under § 5098 of the General Statutes, a conveyance of land is void
if the grantor is, at the time of the transfer, ousted by the entry
and possession of another than the grantee.
In an action to quiet and settle title to real estate, the plaintiff can
only prevail on the strength of his own title, and not upon the
weakness of the defendant's.
A reference in an existing deed to another, which cannot be found,
does not, of and by itself, establish a lost grant of the premises
thus referred to.
Nor can the existence of a title by grant be presumed from pos-
session and use alone; but evidence of possession and acts of
ownership is admissible, not for the purpose of raising a pre-
sumption of a lost grant, but as secondary or corroborative evi-
dence in support of other evidence of a different character
tending to prove that a conveyance had in fact been made.
In determining disputed titles to real estate, the nature and character
of the property itself and of the parties claiming its ownership
are always pertinent subjects of consideration; and if, as in the
present case, the party is an ancient ecclesiastical society and
the land in question is located within the bounds of an old high-
way, the peculiar legal status of such a society, its public rights
and duties, and the traditional custom of locating its buildings

---

*Transferred from first judicial district.

upon the nontraveled portions of highways, may properly be taken into account.

Adjoining plaintiff's land on the south and within the limits of an ancient highway were certain carriage sheds which had been exclusively used from time immemorial in connection with the defendant's church building known as the Conference House. The record title to the land upon which the sheds stood could not be traced, but a deed, dated 1775, to the defendant society of another portion of the highway contained a reference to an earlier conveyance of the premises in question. *Held* that, under all the circumstances, the trial court properly concluded that the defendant had title to the sheds both by lost grant and by adverse possession.

Argued June 11th—decided September 19th, 1925.

SUIT to quiet and determine the title to real estate alleged to be in plaintiff, brought to the Superior Court in Litchfield County, where the defendant the Second Ecclesiastical Society of North Canaan, filed an answer denying plaintiff's title and alleging its title to the real estate in question, and a counterclaim alleging title to these premises and trespasses upon a part thereof, and claiming title thereto, damages and an injunction, and the defendant town of North Canaan filed a cross-complaint; thereafter the cause was tried to the court (*Kellogg, J.*) and judgment rendered on the counterclaim for defendant the Second Ecclesiastical Society of North Canaan, to recover $573.73 damages, and for the plaintiff upon the cross-complaint of the defendant the town of North Canaan, and from the judgment for Second Ecclesiastical Society of North Canaan, the plaintiff appealed. *No error.*

*Frank B. Munn* and *Barclay Robinson,* for the appellant (plaintiff).

*Howard F. Landon* and *J. Clinton Roraback,* for the appellee (defendant Ecclesiastical Society).

WHEELER, C. J. We have been over with care the plaintiff's motion to correct the finding, and find that none of the subordinate facts which are material to this controversy were found without evidence, and therefore we find the errors based upon the motion without merit.

The plaintiff's claim of title to the two lots of land, to quiet the title to which this action was brought, rests upon a warranty deed from the Dabolls to him of date April 2d, 1877, conveying to him and his wife Mary Tierney a parcel of land described as follows: "All that one certain tract or parcel of land situate in said North Canaan bounded North on highway, Easterly and Southerly on highway and West on Lucy Joslin's land with two dwelling-houses and other buildings standing on the same," excepting therefrom a parcel conveyed to the railroad company in 1869 on the northerly side. At this time the tract conveyed to plaintiff was enclosed by a fence. On the northerly line, the fence ran from the westerly line in part along the land conveyed to the railroad and in part along the highway leading from Canaan to Norfolk and known as the "upper road;" on the easterly side of the property was a fence adjoining the highway known as the "lower road," running about one hundred feet down to the building called the Conference House. On the southerly side, west of the Conference House, were certain sheds, and about four feet back of the sheds was a fence which ran along this lower road to the southwesterly corner of the premises, and on the westerly side was a fence running from this corner along land formerly owned by Lucy Joslin, but then owned by Barnum Richardson Company, to the place of beginning of the fence at the railroad location. The fence along the easterly side was located about five or six feet from the main dwelling-house upon this tract.

On the opposite side of the lower road from this dwelling-house was a triangular tract, its base running along the upper road about one hundred and seventy feet and running to a point at about opposite the middle of the sheds. It was fenced. Plaintiff's deed from the Dabolls does not describe a triangular piece, as it necessarily must have if it contained this triangular piece. The Noys-Fellows deed in plaintiff's chain of title contains an accurate survey which contains six sides or courses. It describes a parcel of land not running to a point on its easterly side and bounded on its easterly side by a highway. Neither the deed to plaintiff, nor any deed in his chain of title, refers to a highway dividing this parcel in its easterly part, nor purports to convey two pieces of land, nor one piece lying on both sides of a highway. One or the other of these situations would have been present if the triangular piece had been included in plaintiff's deed. The highway along the easterly side of the plaintiff's premises and the westerly side of the triangular piece was a fixed boundary, and the fence along the easterly side of the plaintiff's premises helped identify and locate the easterly boundary as the monument described in the deed. *Roberti* v. *Atwater*, 43 Conn. 540, 546. The chain of title of plaintiff to his premises appears in the finding, unbroken, back to 1775. It proves indisputably that the plaintiff has no reasonable, or even possible, basis for his claim to ownership of the triangular piece. His acts of ownership over this piece fall far short of giving him a title to it by possession. In order to prevail, the plaintiff must do so upon the strength of his own title, and this the trial court properly held he had failed to do, either by proof of a record title, or of one by adverse possession. Further, when the plaintiff obtained his title in 1877, his grantors were not in possession of either of these

pieces of land, and hence his deed could not convey to him either of these tracts. General Statutes, § 5098.

The other parcel of land to which plaintiff claims title is that upon which the sheds stood. The trial court held that the Second Ecclesiastical Society had not only the record title to this land, but also a title by adverse possession. The record title depends upon these facts: In 1767, the General Assembly divided the town of Canaan into two distinct Ecclesiastical Societies, the First Society and the Second Society, with all the powers and privileges usually belonging to such societies. On April 18th, 1775, Josiah Squire— "for the consideration of having an open road from the four rod road by John Spauldings to the six rod road by Thomas Fellows near the Blackberry River and for other considerations, . . . received . . . of the Second Society in Canaan,"—granted unto "the inhabitants of said Second Society, their heirs and assigns forever, such and so much of the land that we are now possessed of that belonged formerly to the heirs of Gabriel Cornish late of said Canaan, deceased, Near adjoining said Blackberry River, as Truly falls Within the Limits of said Highway as Laid Out and Described in a deed from Aaron Buck, Samuel Forbes and Others of Lands for said Highway from John Spauldings to Thomas Fellows. Said road begins the South side of the River South of Samuel Forbes Dwelling House and Runs by Forbes & Miller's Mills and Ends at the Six-Rod Road near Thomas Fellows Dwelling House, Bounds and Points of compass are particularly described in said deed from Samuel Forbes, Aaron Buck and others, reference thereunto being had." Thomas Fellows' house stood on or near the site of Charles Tierney's dwelling-house, southerly of and about opposite the center of the triangular piece of ground. John Spauldings' house was south of the Blackberry

River, which was south of the sheds. Forbes and Miller's mills were located where the present plant of the Barnum Richardson Company is, southerly of plaintiff's premises. The six-rod road is the main highway, or upper road, from Canaan to Norfolk. The trial court found that the highway referred to in this deed was the lower road. This conclusion was properly drawn. The deed from Aaron Buck, Samuel Forbes and others, referred to in this deed, was not laid in evidence; it could not be found. By itself Squire's deed to the Second Society, coupled with the fact that the deed therein referred to was lost, would not establish a lost grant. The trial court did not base its conclusion that the Society had a title of record upon this evidence alone. Other facts did appear in evidence upon which the court relied and was entitled to rely. The Conference House, separated from the sheds on the north, stood upon land which the plaintiff purchased from the Society. The sheds faced the church and were directly opposite and across the traveled highway and had existed in this location from time immemorial. Their use and occupation exclusively for the members of the Society and those attending the church, indicated clearly that the purpose of their erection was for the benefit of the church. These members and attendants at the church used the sheds under claim of right to such use. All repairs made upon the sheds were made by the Society or its members, or organizations connected with the church. All of the control exercised over the sheds had been by the Society or its members. None of the members using the sheds ever claimed the right of ownership in the land or the sheds, only the right to use them or a particular stall, over which they had the right of transfer. The plaintiff knew of the repairs being made upon the sheds within the period of his occupancy of

his own premises; once these repairs consisted in placing a new roof over the sheds, and he at no time made objection to the making of the repairs, nor, until a recent period, claimed ownership to the sheds. One of the grantors of plaintiff, prior to the conveyance to him, disclaimed ownership in the sheds and asserted the ownership of the church to them. The sheds were not adapted to any purpose except that to which they had been put from time immemorial. The character of the building and the purpose of its use were permanent, and from the earliest time it had been located outside of and southerly of plaintiff's fence line and about four feet therefrom. The fence southerly from the sheds had been twice pushed forward toward the traveled highway by the plaintiff, and about six years ago pushed forward so as to form a line with the south-easterly corner of the sheds. From these facts the trial court concluded that the Society had title by grant to the land on which the sheds stood, and had also acquired title by adverse possession.

The existence of a title by grant cannot be presumed from possession and use alone. But possession and acts of ownership, in connection with other evidence, may serve to establish a title by grant by rendering it probable that an actual conveyance had in fact been made and the grant lost. In *Cahill* v. *Cahill*, 75 Conn. 522, 54 Atl. 201, 732, the plaintiff claimed to have shown a legal title by showing possession and acts of ownership which, in connection with other facts established, showed that plaintiff's ownership rested upon a valid deed. We treat in that case of this claim and of evidence of this character in this way: "The possession and acts of ownership may with other circumstances be proven to perfect the evidence of title. The possession and acts are admitted as secondary, corroborative evidence of an actual conveyance, or of some

accompanying requisite of which the original and best evidence is lost. The admission of this evidence assumes the theory of an actual conveyance, as well as the existence of other evidence of a different character rendering it probable that such a conveyance was made. It is received as one piece of evidence which, with other testimony, tends to prove that a conveyance in fact was made, and to enable the trier to find, from the whole evidence, such conveyance in fact. The evidence in question is not received for the simple purpose of creating a presumption which should of itself have operative effect. The presumption to be derived from the evidence is one for evidential effect; that is, it is to be weighed and considered in connection with other testimony, and the presumptions and inferences therefrom in its bearing upon the ultimate question of fact to be determined, to wit: the question of a conveyance in fact." The proper application of this rule of law to the facts found necessarily requires, as we think, the conclusion which the court drew both as to the title of record and that by adverse and exclusive possession. In *Taylor* v. *Danbury Public Hall Co.,* 35 Conn. 430, 434, in determining the title of a church society to a piece of land which the record did not sustain, we said: "We must look then to the legal status of the property, the nature and character of the party who was to occupy it, together with the attending circumstances, and the purposes for which it was to be occupied, in order to form a just conception of the understanding of the parties concerned in respect to the interest which the society took." The court's examination led it to hold that the church society had a title by an adverse and exclusive possession. The facts upon which the court relies in the case at bar are in important particulars more persuasive than in *Taylor* v. *Danbury Public*

*Hall Co., supra,* and notably in the deed to the defendant Second Society which refers to another deed, strengthening, as its counsel claim, "immeasurably the presumption that the fee of this highway is in the society." This presumption is strengthened further, if we look at the facts of record, in the light of the character, the powers, the history, and the practical management of church societies, as we state them in *Taylor* v. *Danbury Public Hall Co.,* 35 Conn. 430, 434: "In the second place, the society was not then regarded as a private corporation, but was a public corporation with territorial limits, as much so as towns. Every legal voter within those limits was a member of the society, *nolens volens.* The society was required by law to erect and maintain houses of public worship, and for that purpose taxes were levied and collected, the same as for other public purposes. The distinction in the public mind between taking land for a highway and for public worship was not a very material or important one. The duty of taking it for both purposes, as well as incurring other expense, was imposed upon the public by legislation, upon the town in the one case and upon the parish in the other. After land had been taken for a highway it was considered that that portion of it not needed for actual travel might with propriety be set apart for public worship. Hence buildings for that purpose were usually erected within the limits of the highway. As the title was supposed to be in the public, the adjoining proprietors were not regarded as having any interest in it, and were not made parties to the proceedings. No provision was made for compensation to them, as there would have been, had it been supposed that it was taking private property for public use. If private property was taken outside of the limits of the highway, as is usually done at the present day, it must

have been understood that the society would acquire title from the owners by regular conveyance."

Presumably without right, so far as this record discloses, the plaintiff twice pushed forward the fence, enclosing his premises southerly of these sheds as it existed when he made his purchase; indisputably without right, he attempts by this proceeding to legally secure title to the triangular piece of land and to the land on which the sheds stood, first having unlawfully demolished and removed the sheds from the land. The judgment finds the issues for the Second Ecclesiastical Society of North Canaan upon its counterclaim and that it recover from the plaintiff the value of the sheds. The judgment in favor of the Second Ecclesiastical Society is good as far as it goes; it appears to be defective in that it fails to follow the memorandum of decision as to the judgment actually rendered by the court, that "judgment is to be entered finding the issues for the defendants upon the complaint." The judgment should be corrected to conform to the memorandum.

There is no error.

In this opinion the other judges concurred.