DAVY *v.* TRUSTEES OF PROTESTANT EPISCOPAL CHURCH.

1. ADVERSE POSSESSION—CORPORATIONS—ACTS OF POSSESSION—
   CHURCHES.
   The rule that a corporation can only show possession by proof of
   corporate acts, while applicable to a municipal corporation, is
   not controlling where such possession is claimed by a church
   organization, the members of which constitute the corporation.

2. SAME—EVIDENCE—SUFFICIENCY.
   Where church members for almost 50 years made such use of
   land adjoining the church building for all of the purposes
   for which church property is ordinarily used that it must have
   been apparent to holder of record title that the church was
   claiming title, the occupation was of such open, distinct,
   notorious, and hostile character as warranted finding of title
   thereto in the church by adverse possession.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted April 8, 1930. (Docket No. 1, Calendar No. 34,477.) Decided June 2, 1930.

Ejectment by J. Ira Davy against the Trustees of the Protestant Episcopal Church for the Diocese of Michigan, a Michigan corporation, and St. James Church of Grosse Isle. From a judgment for defendants, plaintiff brings error. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Leo W. Kuhn,* of counsel), for plaintiff.

*Joslyn, Joslyn & Joslyn,* for defendants.

SHARPE, J. Plaintiff brings ejectment to recover a plot of ground in Grosse Isle having a frontage of

99 feet on what is known as the River road, and extending westward therefrom a distance of 350 feet, except the part thereof occupied by St. James church and a right of way over the front 55 feet thereof leading thereto.

The case was tried before the court without a jury. He made findings of fact, and concluded as a matter of law that defendant had acquired title thereto by adverse possession. Plaintiff seeks review by writ of error.

In 1868 James Biddle owned a large tract of land fronting on the River road, which included that here claimed by plaintiff. The church now on the land was built in that year by him and others. In 1873 he conveyed a description of land which would include that in dispute to George Goss. The conveyance contained the following clause:

"Excepting and reserving from the tract above described, the Episcopal Church and the land upon which the same stands together with a right of way thereto from the highway on the bank of Detroit River."

In 1880 Mr. Biddle conveyed to the Church Association of Michigan the following:

"The Episcopal Church and the land upon which the same stands, together with a right of way thereto from the highway on the banks of the Detroit River, as described and set forth in a deed by said James Biddle and wife to George Goss dated March 26th, 1873, and recorded in Liber 167, page 241."

By subsequent conveyances containing the same description, the title was vested in the defendant trustees. The abstract of title does not appear in the record, but it seems to be conceded that the plaintiff acquired the record title to the property

conveyed by Biddle to Goss on April 1, 1926. It contains a frontage on the River road of 777.05 feet.

There is little dispute in the facts. Soon after the church was erected, Mr. Biddle built a driveway from the River road in front of the church up to its southerly side and somewhat further to the west. He also built a stone fence along the River road in front of the property and a fence along the south side thereof from the road several hundred feet back. There are few witnesses who have a recollection of what occurred in these early days. Mrs. Benjamin Douglas, a niece of Mr. Biddle, who was born in 1862, and who has attended and been a member of this church all her lifetime, testified that "the church used the land from the church easterly to the road for church services, socials, anything connected with the church;" it "was beautified, kept as a nice lawn since 1868." She recalled the fence on the south side. It was of wire, and, she thinks, erected after the church was built. The property north of the church was used as a part of the lawn. West of the church the property was used for parking horses and carriages, and afterwards for automobiles, by those attending the church.

William T. Gage, who has lived on the island since 1885, and who has been a member of the vestry of the church for many years, testified:

"The land in front of and north and west of the church in 1886 was used for about the same purpose as it is now, with the exception that we had horse and wagon vehicles there instead of automobiles. We used then to drive to the church and we would go back of the church and leave our vehicles there during service and we would return by the same way. In front of the church there was quite a large space divided by the roadway and the sidewalk and we used it for social purposes, but never for parking

or vehicles or anything like that. When there were little activities by the church like a sort of outdoor picnic or a supper or church affair or any gathering of the congregation, that would be the place of their assembly and meeting.

"The land to the east of the church and to the north of the church was in very good condition and kept very nicely by the church, mowed the grass and tended to the lawn and kept it in very good shape."

The deed to Goss in 1873 conveyed all the land which the church now claims title to except that on which the church building stands. But it quite clearly appears that, since the conveyance to the church by Biddle in 1880, the congregation of the church have used this land as their own for all of the purposes for which church property is ordinarily used, and it could not but have been apparent to Goss and his grantees and to all others passing it that they were claiming title thereto. In 1906, a church house was erected on the land adjoining the church on the north. While the members of the church who built it as a matter of precaution secured a lease from the railroad company which then had title, the vestry or governing body of the church in no way recognized such ownership on the part of the railroad as now precludes the defendant from insisting on its claim of adverse possession. The plaintiff could but have been aware of such claim had he viewed the property when he purchased the land in 1926. But he chose to rely on the abstract of title rather than to inquire into the nature of the possession of the defendant.

In *Chabert* v. *Russell,* 109 Mich. 571, 574, it was said:

"In order to constitute adverse possession, the acts of possession on the land claimed to constitute

the adverse possession must be such as, if seen by the plaintiff, would clearly apprise him that the party doing the acts claimed the ownership of the property."

The above, and also the following from 14 Cyc. p. 1148, were quoted with approval in *Village of Manchester* v. *Clarkson,* 195 Mich. 354, 363:

"The enjoyment must be of such a character that an ordinary owner of land, diligent in the protection of his interests, would have or must be taken to have, a reasonable opportunity of becoming aware of that enjoyment."

Counsel for the plaintiff insist that "A corporation can only show possession by proof of corporate acts." *Green* v. *Inhabitants of Chelsea,* 24 Pick. (41 Mass.) 71. This rule, while applicable to a municipal corporation, is not controlling where such possession is claimed by a church organization, the members of which constitute the corporation. The use made of this property by the members of this church was such that, when observed by those claiming the record title, or even by those passing thereby, it could but have been notice of a claim of ownership thereto.

"It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question." *Murray* v. *Hudson,* 65 Mich. 670, 673 (quoted approvingly in *Whitaker* v. *Erie Shooting Club,* 102 Mich. 454, 459, and in *Pulcifer* v. *Bishop,* 246 Mich. 579, 584).

While "Evidence of adverse possession must be strictly construed, and every presumption is in favor of the true owner" (syllabus, *Houghton County* v.

*Massie,* 215 Mich. 654), the occupation of these premises for almost 50 years was of such an open, distinct, notorious, and hostile character as warranted the finding of title thereto in the defendants by adverse possession.

The judgment is affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.