THE MISSIONARY SOCIETY OF THE DIOCESE OF CONNECTICUT *v.* RAYMOND J. COUTU

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 7—decided May 6, 1948

*Irwin I. Krug,* for the appellant (defendant).

*Robert Ewing,* with whom was *W. A. Countryman, Jr.,* for the appellee (plaintiff).

DICKENSON, J. The plaintiff in this action sought an injunction against the erection of a building encroaching upon a way in which it claimed a prescriptive right. The defendant has appealed from a judgment for the plaintiff on the main grounds that the user was not by the plaintiff and was insufficient to establish a prescriptive easement. He assigns error in the finding of certain facts and in the refusal of the trial court to adopt certain paragraphs of his draft finding; he refers to these assignments in his brief, but merely states broadly that an examination of the record will indicate the errors. No duty is imposed upon this court to search the record for

support for the defendant's claim for additional findings. *Linahan* v. *Linahan,* 131 Conn. 307, 311, 39 A. 2d 895. The appellant's brief should specifically set forth the claims and reasons upon which he relies. *Marra* v. *Kaufman,* 134 Conn. 522, 529, 58 A. 2d 736. The evidence sufficiently supports the findings made by the trial court.

The material facts are as follows: The plaintiff owns land on the southwest corner of Valley and Walnut Streets, Willimantic, on which stand a church, with a parish house attached, and a rectory, both church and rectory fronting on Valley Street. Since before the year 1900 a vehicular way about twelve feet in width ran westerly from Walnut Street parallel to Valley Street to High Street, which is parallel to Walnut Street and is the next street west of it. The rear or south line of the plaintiff's land, 110 feet in length, is coincidental with the north line of the way. In 1934 the defendant rented part of the land fronting on Walnut Street over which the way ran and erected a board fence across the way some distance west of the plaintiff's property, preventing use of the way as a through way between Walnut and High Streets but not interfering with the plaintiff's use of it as a means of access to its property. In 1936 the defendant purchased a tract between Walnut and High Streets including the land over which the way ran. In 1946 he began the erection of a building on his land, the northerly wall of which was to be within a foot of the plaintiff's southerly line; this would make it impossible for the plaintiff to use the way. The plaintiff thereupon instituted this action.

The way was known as Strong's Court and for some time prior to 1900 and until 1934 was used by the general public, afoot and with vehicles, as a short

cut between Walnut and High Streets. It was never a public highway nor was any claim made by the general public of a right to use it. There were houses on both sides of the westerly part of the way, fronting upon it, and the way was used for access to them. The three church structures are adjacent to the way as it runs along the south line of the plaintiff's property. These have existed as they now stand since 1912, and the parish house and rectory are much older. The only outside door in the parish house until 1923 opened to the south, and steps led from a porch to within about three feet of the way. Sometime between 1923 and 1931 the rector of the church had a door cut in the north wall of the parish house, but the south door continued to be used by the members of the church for the purpose of carrying articles necessary for church functions in and out. The rear yard of the rectory, wherein ashes and refuse are collected, likewise opens on the way through a gate in a picket fence. There are various openings in the rear of the church through which deliveries of coal and oil are made. Since 1920 the rector of the church, the sexton and numerous other workers of the church have made use of the way adjacent to the south line of the property with automobiles and on foot to make deliveries of furniture, food and other articles to the parish house, and the way has been used to make deliveries of fuel to the church by truck, and by persons removing ashes and refuse from the rear yard of the rectory.

These various uses were open and visible to the defendant. The plaintiff never sought permission from the defendant to use the way, and no permission was ever given by him or by his predecessors in title to persons using the way in connection with the church. The use was a special one appurtenant

to the plaintiff's property, differed from that of the general public, and did not depend upon any right of the public. It was made under a claim of right without recognition of a right of the defendant to prevent it. The limits of the way material to the case are well defined as twelve feet in width along the south boundary of the plaintiff's land, and the trial court found it a reasonable inference that the user extended over the entire width and length opposite the plaintiff's property. It further found as a reasonable inference that the plaintiff's user, in view of the location of the plaintiff's buildings since 1912, was a practical necessity, as the defendant must have known, and was acquiesced in by the servient owner.

The plaintiff is a corporation specially chartered by the legislature and located in Hartford and is the owner of the church property in question. The trial court has found that the rector of St. Paul's Church and all its members share by a chain of representation in the management of the plaintiff society and contribute to its financial support, that the church property is, and has been, used by St. Paul's Church under the direction and control of the plaintiff since its acquisition by the plaintiff, and that St. Paul's Church is not the tenant of the plaintiff. The defendant attacks these findings, claiming they are not supported by the evidence and that the plaintiff cannot have advantage of the user by the rector and members of St. Paul's to establish a prescriptive title to the right of way.

Special Laws of Connecticut, volume 11, page 465, authorized the plaintiff corporation to establish, carry on and support parishes. St. Paul's was one of its parishes, and its rector is a member of the plaintiff society by virtue of his office. The plain-

tiff does not use its property other than through St. Paul's Church. Other facts found on sufficient evidence indicate that St. Paul's was not only the representative of the plaintiff but was so recognized by the defendant. He conducted a business of wrecking automobiles and selling used parts on his property across the way from that of the plaintiff. In 1939 he proposed to erect a fence across the front of his property on Walnut Street, including the entrance to the way, in order to prevent theft of automobile parts stored on the property, and conferred with the rector of the church, who objected to any obstruction of the way. The conference resulted in the construction of such a fence with a gate at the entrance to the way on Walnut Street. Further incidents occurred subsequently in relation to this which it is unnecessary to recite in view of the fact that the trial court reached the conclusion from the subordinate facts that the prescriptive title had ripened in the plaintiff by the year 1936.

The apparent claim of the defendant is that St. Paul's Church was a tenant at will of the plaintiff and that under our decision in *Deregibus* v. *Silberman Furniture Co.*, 121 Conn. 633, 638, 186 A. 553, its use of the way could not inure to the benefit of the plaintiff, because user by a tenant of land not a part of the occupied premises will not avail the owner. A sufficient answer is that St. Paul's Church did not occupy the premises as a tenant of the plaintiff but rather as its agent or as a branch of it. The plaintiff, by the acts of the rector and members of the church representing it, could acquire a prescriptive easement. *Tierney* v. *Second Ecclesiastical Society,* 103 Conn. 332, 337, 130 A. 286; *Camp* v. *Camp,* 5 Conn. 291, 298; *Davy* v. *Trustees of Protestant Epis-*

copal Church, 250 Mich. 530, 534, 231 N. W. 83; note, 27 L. R. A.(N. S.) 388; 45 Am. Jur. 762.

The defendant contends, on authority of *Great Hill Lake, Inc.* v. *Caswell,* 126 Conn. 364, 11 A. 2d 396, that the plaintiff's user was no more than that of the general public and hence was not exclusive. In that case, residents owning land bordering on an artificial lake used the entire lake, in common with the public, for bathing, boating and fishing. We stated the rule to be that where an individual use is in common with a public use the individual user, in order to establish an independent prescriptive right, must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right. Note, 111 A. L. R. 221. The rule is well stated in 17 Am. Jur. 976, § 64: "The term 'exclusive use' . . . does not mean that no one has used the way except the claimant of the easement. It simply means that his right to do so does not depend upon a similar right in others. The rule generally, if not universally, followed is that use of a right of way in common with the public is regarded as negativing a presumption of grant to any individual user. Thus, in such a case, the individual user must, in order to establish an independent prescriptive right, perform some act to the knowledge of the servient owner clearly indicating his individual claim of right." See *McKenzie* v. *Elliott,* 134 Ill. 156, 24 N. E. 965; *Thompson* v. *Bowes,* 115 Me. 6, 97 A. 1; *Schmidt* v. *Brown,* 226 Ill. 590, 599, 80 N. E. 1071. In *Merwin* v. *Wheeler,* 41 Conn. 14, the defendant claimed a prescriptive easement to take sand from the plaintiff's beach. It appeared that he took this as one of the public, and we stated (p. 24): ". . . the defendant, to prove a prescriptive right in himself, offered evidence showing that

he had done precisely what the public had done; that he, in other words, as one of the public, had taken sand from the beach *ad libitum*. He did this, not as the owner of other lands, for the benefit of those lands and as incident to an estate in such other lands, but in gross, as one of the public, and not under any claim of individual right in himself other than as one of the public."

It is apparent from these authorities that there must have been a use of the way by the plaintiff distinctive from that of the general public in order to sustain its claim of prescriptive right, since the right is based upon notice and acquiescence in such a use by the servient estate. The erection and maintenance of the church buildings with openings on the way indicated an appurtenant use of it by the plaintiff. Its use for the purpose of parking, stopping and backing in of vehicles to discharge or load fuel, ashes, furniture, food and other articles was patently different from its use by the general public. *Jean v. Arsenault*, 85 N. H. 72, 73, 153 A. 819. There was a definite and continuous use of the way as an adjunct to the church property, and the trial court has found that its use was a practical necessity, as the defendant must have known and appreciated. The court reasonably could have found, as it did, that the use was distinct from the public use.

A subsidiary claim of the defendant is that the use was permissive and not adverse, on the ground that the way was kept open for the convenience of the residents on the western end of it. Their use does not appear, other than that it was for the purpose of access to the public streets at a time when the entire property was owned by the defendant's predecessors in title. The use by the servient estate, there being no claim by the plaintiff of a prescriptive

right in the fee, would not prevent the acquisition of a right of easement. *Phillips* v. *Bonadies,* 105 Conn. 722, 728, 136 A. 684.

The question of the establishment of a prescriptive right is one of fact for the trier. *West* v. *Lewis Oyster Co.,* 99 Conn. 55, 67, 121 A. 462. "The trial court perforce had to reach its decision by considering the nature and character of the use and the surrounding circumstances." *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 377, 44 A. 2d 702; *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22. We said in *Bradley Fish Co.* v. *Dudley,* 37 Conn. 136, 147: "The circumstances of this class of cases are so varied, and it is so important that every circumstance should be taken into consideration, that we doubt the propriety of laying down universal and absolute rules of law as to the effect in evidence of particular facts. . . . Whether long continued use of an easement is adverse or is in subordination to the title of the true owner is . . . a matter of fact to be decided like other facts upon evidence and upon the circumstances of each particular case." This is, of course, subject to the exception that this court may intervene when the conclusion of the trier is unjustifiable or illogical or legally inconsistent with the facts. *Palumbo* v. *Fuller Co.,* 99 Conn. 353, 362, 122 A. 63. In the case before us, we cannot say that the trial court could not reasonably and legally have reached the conclusion that the plaintiff, through its parish, St. Paul's Church, had established a prescriptive easement in the way. The issuance of the injunction based on that conclusion was within its discretion.

There is no error.

In this opinion BROWN, JENNINGS and ELLS, Js., concurred.

MALTBIE, C. J. (dissenting in part.) I agree with the opinion except in this respect: The use actually made of a way claimed by prescription determines its extent. *Hawley* v. *McCabe*, 117 Conn. 558, 560, 169 A. 192. I am unable to find in the evidence any sufcient basis for the inference drawn by the trial court that the user in this case extended the full length of the south boundary of the plaintiff's property.