THE LAKE WANGUMBAUG NORTHEAST SHORE IMPROVEMENT ASSOCIATION, INC. v. THE LAKESIDE INCORPORATED ET AL.

COURT OF COMMON PLEAS · TOLLAND COUNTY · FILE No. 516

Memorandum filed September 5, 1951.

*Harry H. Lugg*, of Rockville, and *Alva P. Loiselle*, of Willimatic, for the Plaintiff.

*I. Mayo Cohen* and *John B. Sullivan*, both of Willimantic, for the Defendants.

PARMELEE, J. The defendant The Lakeside Incorporated is the owner of certain land and buildings situated in the town of Coventry, on the shore of Lake Wangumbaug. The defendant Leonard J. Sholes is in possession of all or some of this property under a lease from The Lakeside Incorporated. The plaintiffs claim in the first count of the complaint to have acquired a right of way across the defendants' property by adverse

user, and in the second count claim that a roadway crosses the defendants' property and has been dedicated and accepted by the public as a public highway.

The property in question was owned by the New York, New Haven and Hartford Railroad Company and its subsidiary, the Connecticut Company, from 1908 until February 21, 1927, when it was conveyed to one Daniel Killourey. The plaintiffs concede that no right by prescription ran against the defendants or their predecessors in title while that land was owned by the railroad company. See § 7111 of the General Statutes. Prior to ownership by the railroad company, access to this property from the highway was barred by a stone wall. From the credible evidence it is concluded that no adverse rights were acquired by the plaintiffs prior to ownership by the railroad company. The plaintiffs now claim that their prescriptive right began to run on February 21, 1927, when the Connecticut Company conveyed the premises to said Daniel Killourey. From 1907 until 1933 Daniel Killourey, later succeeded by John J. Killourey, conducted near the shore of Lake Wangumbaug a business of selling lunches, ice cream and sodas to the general public, and from 1921 to 1933 conducted a dance hall in conjunction with said business in the same location. This business and dance hall were conducted on land owned by Daniel Killourey and later by John J. Killourey, which abutted on the north land of the railroad company used as the lake shore terminus of its street railway line. Upon acquiring title to the Connecticut Company's said land in February, 1927, and thereafter, until about 1933, Daniel and John Killourey, in unbroken succession, continued to conduct their business, inviting the public to come upon said land to patronize said business. A portion of said land was used as a parking area. In 1932, John Killourey erected a barrier consisting of two cement blocks, the size and shape of a barrel, one on either side of Woodland Road where said road adjoined his land, and chained and locked a two-inch diameter pipe, sixteen or eighteen feet long, between said cement blocks, thus effectively blocking traffic from passing from said Woodland Road on to the land purchased from the railroad company. This barrier remained in place during the summer of 1932 and all persons passing through the barrier did so by getting the permission of John Killourey, the owner of the property.

On March 2, 1936, The Willimantic Savings Institute acquired title to said land by foreclosure of a mortgage. On November 5, 1936, the property was conveyed to St. John Berchman So-

ciety, which society conveyed said land to the defendant The Lakeside Incorporated on October 8, 1938. The defendant Leonard J. Sholes has had possession of said land under a lease from The Lakeside Incorporated since June 15, 1940.

During the summer of 1937 and each summer thereafter through 1949, said land was used in connection with the amusement business conducted by St. John Berchman Society, by the defendant The Lakeside Incorporated, and by the defendant Leonard Sholes, in unbroken succession on said land and in the Casino Building adjoining, the public being at all times invited by newspaper advertisements, and otherwise, to enter thereon and patronize said business, consisting largely of dancing and roller skating. During each of these years, about two weeks after Labor Day, the said business was closed for the winter season and at that time each year said pipe was placed between the two cement barrels aforesaid, one end of the pipe on each barrel, and secured in that position by chains, thus effectively blocking passage from Woodland Road to the premises of the defendant The Lakeside Incorporated. Periodic visits were made to said premises during each winter by the defendant Leonard Sholes and by his employee, Leo Bourgois, to inspect the premises, which always included examination of said pipe barrier to see that it was in position between the cement barrels. On some inspections said pipe was found to be in position across the said barrels and on some inspections it was found on the ground, whereupon it was always restored atop the barrels and chained there. About May 1 each year, the defendant Leonard Sholes opened his business on the property in question and at that time removed the pipe from the barrels. In 1938 the defendant Leonard Sholes placed signs reading "Private Driveway, Use at Your Own Risk," one at the entrance to the property in question from Lake Street, and one at the point where Woodland Road abutted said property, which signs have remained continuously in said locations to the date hereof.

Although it is true that the plaintiffs have passed over the defendants' land, such use has been effectively interrupted by the defendants by barways and fences and signs on the property. One of the essentials to an easement by prescription is that the use must be continuous and uninterrupted. If the use of a way is interrupted, prescription is annihilated and must begin again, and any unambiguous act by the owner, such as closing the way at night or erecting gates or barriers, which evinces his intention

to exclude the public from its uninterrupted use destroys the prescriptive right. 17 Am. Jur. 972; *Horowitz v. F. E. Spencer Co.*, 132 Conn. 373; *Bradley Fish Co. v. Dudley*, 37 Conn. 136.

The property now owned by the defendants has, since 1909 and continuously thereafter to the present time, been used by each succeeding proprietor as a place of business catering to the public. These included its use as a street railway terminal, food, ice cream and soda retail business, dance pavilion, roller skating pavilion, boats and bathhouses for hire. All of the successive proprietors of this property in turn invited the public to enter upon their land and to patronize their respective businesses. Free access to all parts of the premises was given to all persons who entered. The plaintiffs, if and when they entered this property, did so in common with such use by the public and with no mark of distinction or identification to set them apart from the public or to draw attention to them as exercising an exclusive use. "[W]here an individual use is in common with a public use the individual user, in order to establish an independent prescriptive right, must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right . . . . The rule generally, if not universally, followed is that use of a right of way in common with the public is regarded as negativing a presumption of grant to any individual user." *Missionary Society v. Coutu,* 134 Conn. 576, 582.

Such use as the plaintiffs have made of the defendants' property was not continuous and uninterrupted, nor was it under a claim of right and with the knowledge and acquiescence of the defendant owner. On the contrary, the user was frequently interrupted by the defendants and their predecessors by barriers and legible notices posted on the property. The credible evidence and the facts found therefrom fail to establish a prescriptive right in the plaintiffs to the property described in the complaint.

The second count in the complaint alleges a roadway across plaintiffs' property, dedicated and accepted by the public as a public highway. As previously stated, this property has been used continuously since 1909 as a railway terminal, food, ice cream, soda retail business, dance pavilion, roller skating pavilion, boats and bathhouses for hire. Free access was given to persons to enter this property to patronize the business conducted thereon. There was no intention on the part of any of

the owners of this property to devote it to public use, nor would their acts and conduct imply any such intention. "The opening of a passageway over one's own land as a convenient means of access for himself and his customers to his store or hotel does not amount to a dedication to a public use of the land so thrown open, although such passway may also be used by the public generally. Such use by the public can only properly be held to be under an implied license." *Loomis* v. *Connecticut Ry. & Lighting Co.*, 78 Conn. 156, 161. "Dedication implies two things; an intention on the part of the owner of land to devote it to public use, and an acceptance of it for such use by the public. . . . But an intention to do so [dedicate] ought to be manifest. It will not be presumed; on the contrary, in the absence of fraud, or conduct which misleads others, courts will require that it be clearly and satisfactorily proved." *Williams* v. *New York & N. H. R. Co.*, 39 Conn. 509, 519. " 'Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public.' . . . It implies two things: an intention on the part of the owner to devote it to a public use, and an acceptance of it for such use by the public." *Kent* v. *Pratt*, 73 Conn. 573, 578. "There must in all cases be an intention on the part of the owner to dedicate his land. This may be implied from his acts and conduct, but they must be such that his intention is clearly manifest. . . . 'No presumption of an intent to dedicate arises unless it is clearly shown by the owner's acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended.' " *LaChappelle* v. *Jewett City*, 121 Conn. 381, 386. No dedication for public use has been established.

All the issues are found for the defendants, for whom judgment may enter.