[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue in this case that must first be resolved is whether the State of Connecticut has exclusive jurisdiction to control recreational clamming in the natural shellfish beds in the waters south of the Town of Westport and north of the state jurisdiction line established for said town by Chapter 160, P.A. 1881 of the Connecticut General Statutes.
By the provisions of said Chapter 160 (presently 26-192) the Town in 1881 was given jurisdiction and control of the areas presently in dispute.
The parties are in disagreement as to the affect of Chapter 125 enacted in 1909 (ex. 1), the statutory predecessor to Connecticut General Statutes 26-257.
The plaintiffs claim that as a result of the enactment of this statute and the preparation and acceptance by the State Shellfish Commission of Ex. B on June 28, 1910, control of all shellfisheries, including all natural clam beds north of the jurisdiction line established by Chapter 160, was returned to State jurisdiction and control.
The defendants claim that the only areas returned to the jurisdiction of the state were those areas designated on Ex. B as privately owned shellfish grounds.
The resolution of this disagreement centers on the meaning of the term "shellfish grounds" which is the key to the interpretation of 1909 Chapter 125, Ex. B and Ex. 2, the minutes of the State Shellfish Commission for June 28, 1910. CT Page 654
This court has examined the 1902 Rev. of the Connecticut General Statutes 3213 thru 3280. These statutes are a guide to the meaning of the term "Shellfish grounds" in Section 1 of 1909 Chapter 125 contained in the phrase "cause a map to be made of the shellfish grounds located in the waters of said town." There is a distinction in these 1902 statutes between the term "grounds" and "beds". In statutes referring to private cultivation of shellfish, the areas so designated are referred to as "grounds". Areas containing shellfish but not designated for private cultivation are referred to as "beds". This court is persuaded by the use of "grounds" as referring to private cultivation in the existing statutes preceding its enactment that the term "shellfish grounds" in Section 1 of 1909 Chapter 125 is limited to privately owned designated areas for shellfish cultivation.
This interpretation of "shellfish grounds" is further reinforced by the inclusion in Section 1 of the phrase "including Saugatuck river and Compo Mill pond" both of which have located therein designated private shellfish grounds. If either body of water did not have such grounds, then this would give some weight to plaintiffs' claim that all the waters on Ex. B were returned to State jurisdictions and control. The presence of these private designated shellfish grounds leads to a contrary conclusion.
The language of Exhibit 2, the minutes of the State Shellfish Commission, at no time mentions Westport waters or Westport Shellfish beds. All references are to "town grounds", "shellfish grounds", "Westport grounds", and "oyster grounds". This is consistent with the above noted distinction between "beds" and "grounds" in the statutes effective at that time concerning shellfisheries.
The court therefore concludes that the enactment of Public Act 1909 Chapter 125, and the acceptance by the State Shellfish Commission of Exhibit B on June 28, 1910 returned to state jurisdiction only those areas on said map that are designated private shellfish grounds. The remainder of the areas shown on said map and north of the state jurisdiction line continued to be under the jurisdiction and control of the Town of Westport pursuant to the authority granted to it by Chapter 160, P.A. 1881 of the Connecticut General Statutes.
The plaintiffs then ask why the legislature in 1935 passed Senate Bill No. 771, the predecessor to 26-280, which plaintiffs interpret as a return to Westport of jurisdiction to Saugatuck CT Page 655 Shores. There is no legislative history concerning this bill. There was evidence presented that Saugatuck Shores was the area from which recreational clammers would enter upon the natural clam beds when they did not have a boat to do so. In addition, that this created parking problems in the area next to Saugatuck Shores.
The 1935 act authorized Westport to issue a written permit for the limited area of Saugatuck Shores. The municipality could not require such a permit over any of the waters within its jurisdiction without being authorized. That authority was granted only for the Saugatuck Shores area presumably to limit the number of clammers entering Westport waters from the land area of Saugatuck Shores. This is similar to the authority given the town of Guilford in 1941 (See 26-272 since repealed) and the authority given the Town of Stonington in 1959 P.A. 53, S. 1. The authority to license granted these individual towns was given to any town upon the establishment of a local shellfish commission by P.A. 306, now 26-257a, in 1963.
The plaintiffs then question why Westport sought an amendment to26-280 in 1983. The short answer is a misunderstanding based on misinformation. Based on opinions from both state and federal authorities, plus a town attorney's opinion the town was persuaded to interpret 26-280 as a statute limiting its jurisdiction rather than its proper interpretation as a statute granting authority to require permits for a limited area of the waters under its jurisdiction and to limit its authority over residents of Westport, Wilton and Weston as to a permit requirement over certain other areas of its waters which is not an issue in this case.
The legislative history of P.A. 83-236 affirms the perception of the legislators and town officials that Westport had no jurisdiction over town waters shown on Exhibit B with the exception of Saugatuck Shores. That perception was not legislated however, and therefore there was no change in jurisdiction and control of town waters, not designated Oyster Grounds on Exhibit B. Jurisdiction remained with the Town of Westport as provided by Chapter 160, P.A. 1881 of the Connecticut General Statutes with no effective legislative action to diminish that jurisdiction and control granted to the Town in 1881.
The plaintiffs also cite the provisions of P.A. 1911, Chapter 233 as further evidence of state jurisdiction of town waters. They reason that their would be no need to grant exclusive jurisdiction and power to designate shellfish grounds in the creeks and estuaries tributary to Compo Mill pond in said town, if the town's jurisdiction had not been returned to the state. The effect of the statute is the CT Page 656 reverse and is a limit on the jurisdiction granted to the state by26-257 and its predecessors. The granting of exclusive jurisdiction is not to be interpreted as a needed grant of jurisdiction, but rather as a bar to the state of any claim to be able to exercise the power to designate shellfish grounds in those waters. The plaintiffs overlook the word "exclusive" which would be surplusage if their interpretation of the statute had merit.
The plaintiffs raise an alternate claim for jurisdiction of the subject beds being under state control. Their claim is that whether there is or is not a legislative basis for jurisdiction in the town, that because various agents of federal, state and town governments have expressed opinions or acted by acquiescence to state jurisdiction over the town waters not designated as shellfish grounds, that this would be binding on all the parties and would give exclusive jurisdiction for these areas, including the Cockenoe Flats, to the state. Although deference should be given by the court to statements and opinions rendered by governmental agents concerning subjects within their jurisdiction and expertise, these opinions must coincide with applicable law. The plaintiffs have failed to cite a precedent for the proposition that a governmental agent may amend a valid statute by rendering an opinion in contravention to the provisions of that statute. Thus the claims based on the statements of governmental agents affirming state jurisdiction to town waters is without merit.
The plaintiffs also claim the right of access and use of the Cockenoe Flats area by virtue of "custom, easement by prescription, adverse possession, implied dedication, Sections 47-37, 47-38, 476-39 (sic), 47-70 (sic) and 47-41 of the Connecticut General Statutes state statutes, and federal and state laws." The plaintiffs have failed to prove an independent prescriptive right by showing an individual claim of right dissimilar from those other members of the general public who clam "Cockenoe Flats". Great Hill Lake, Inc. v. Caswell, 126 Conn. 364, 366-367 (1940). Adverse possession cannot be acquired against the state or its subdivisions for land held for a public use. Cockenoe Flats is used for a public purpose and is owned by the state and under the jurisdiction and control of the town and therefore is not subject to adverse possession. Goldman v. Quadrato,142 Conn. 398, 402, 403 (1955). The provisions of Sections 47-37
thru 47-41 of the General Statutes require proof of adverse use or enjoyment uninterrupted for fifteen years without license or consent of the owner. Where an individual use is in common with a public use, there must have been a use by the individual distinctive from that of the general public Missionary Society v. Coutu, 134 Conn. 576
CT Page 657 (1948). The plaintiffs failed to prove a use not in common with a public use, therefore the statutory sections cited are without merit. The remaining claims of custom, and implied dedication are raised without persuasive authority to justify their merit. These claims are found to be without merit.
Plaintiffs in the fourth count of their complaint seek relief based on an alleged violation of the public trust in the natural resources of the state and more particularly the natural clam beds located at Cockenoe Flats in Westport. This claim is brought under the provisions of 22a-15 which states.
 "Sec. 22a-15. Declaration of policy. It is hereby found and declared that there is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same. It is further found and declared that it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction."
The operative words in the statute protect against "unreasonable pollution, impairment or destruction."
Based on the credible evidence in this case, the Westport Shellfish Commission has, under the authority granted to it, acted in a way that consistently prevented unreasonable pollution, impairment or destruction of the natural clam beds in the town waters north of the state jurisdiction line. The Commission has sought to preserve and control depletion of this natural resource by requiring permits to clam, limiting the daily take, restocking the clam beds, and hiring officers to monitor compliance with its rules. The only impairment to the use of this natural resource is the exercise of the police power of this governmental body within the bounds of the authority granted to it by 26-257a(b).
The plaintiffs have failed to prove that the Westport Shellfish Commission has subjected any natural resource of the state to unreasonable pollution, impairment or destruction and therefore plaintiffs' claim of a violation of the public trust is without merit. CT Page 658
The second count of the complaint is directed against the town of Westport and the Westport Shellfish Commission and claims that their alleged conduct constitutes unfair and deceptive trade acts and practices in violation of 42-110b et. seq. of the Connecticut General Statutes.
Section 42-110C provides in pertinent part:
 "Exceptions. (a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state. . . ."
As noted above, the court has found the actions of the town and the Westport Shellfish Commission that plaintiffs question, to be by statutory authority and within the bounds of that authority. Thus plaintiffs' second count is without merit.
The third count of the complaint is against the former Commissioner of Agriculture, Kenneth B. Anderson. It alleges that the then commissioner conspired with the other defendants to deprive the plaintiffs and all citizens of the State of Connecticut of their rights, privileges and immunities under the laws of the State of Connecticut and that all the defendants actions were under color of state law, were wilful and wanton and caused a deprivation of plaintiffs' property and liberty interests and violated plaintiffs' rights under 42 U.S.C. § 1983 et. seq.
The fifth count of the complaint makes a similar 42 U.S.C. § 1983
claim against the Town of Westport and the Westport Shellfish Commission for allegedly usurping the state's jurisdiction over the area known as Cockenoe Flats and engaging in the acts complained of in the complaint.
These claims are based on alleged flaws in a hearing held by Commissioner Anderson on December 4, 1985 under 26-195 of the General Statutes. The decision of the Commissioner as a result of that hearing was that the Town of Westport had jurisdiction over the waters of the town that were not designated as shellfish grounds and that were located north of the state jurisdiction line. Thus the Commissioner's decision did not add to the existing jurisdiction of the town nor modify it in anyway except to caution the town to treat residents and non-residents in an equal manner. CT Page 659
A Section 1983 action requires a finding that a person has suffered a deprivation of any right, privilege or immunity secured by the Constitution or laws because of the conduct of a person acting under the color of any statute, ordinance, regulation, custom or usage of any state or territory. Gorra Realty, Inc. v. Jetmore,200 Conn. 151 (1986).
The actions of the defendants in participating in the 26-195
hearing were in effect a nullity. The plaintiffs suffered no deprivation of any right or privilege because of the conduct of the defendants related to the hearing and the decision rendered thereafter. Their rights and privileges remained the same, before and after said hearing and therefore their Section 1983 claim is without merit.
The sixth count of the plaintiffs' complaint alleges a taking of the plaintiffs' property and liberty interest without due process of law by the defendants, Town of Westport and Westport Shellfish Commission. The plaintiffs have failed to prove a property interest in the subject area, since they have not proven an interest in Cockenoe Flats greater than that of the general public. That interest is subject to the police powers of the said defendants, granted by 26-257a of the General Statutes. As to the claim of a taking of liberty interests, there are two elements which must be established in order to find a due process violation; first, because not every liberty interest is protected, the plaintiffs must establish that they have a liberty interest that comes within the ambit of the Federal and State Constitution and second, if it is determined that a protected liberty is implicated, then the question of what procedural protections are "due" must be addressed. State v. Davis, 190 Conn. 327, 336. The court is not persuaded that the plaintiffs have a liberty interest in totally unrestricted recreational clamming in the waters of Long Island Sound that comes within the ambit of the Fifth Amendment to the Constitution of the United States
and Article First, Section 11 of the Constitution of the State of Connecticut. At most, their liberty interest would be the ability to participate in recreational clamming subject to reasonable rules established under the police powers of the State, or if properly delegated, to a subdivision of the state, as occurred in this case. See Westport Shellfish Regulations, Exhibit 71. These regulations were adopted with proper compliance as to hearings and notice and therefore plaintiffs' due process claims are without merit. CT Page 660
The seventh count of plaintiffs' complaint alleges that the conduct of the defendants, Town of Westport and the Westport Shellfish Commission is and was wilful, malicious, capricious and with strong hand. The court has found above that the said defendants had been authorized to exercise jurisdiction an control over the waters in question. The actions of the said defendants have at all times been within the scope of their authority. The plaintiffs have failed to sustain their burden of proof to show the defendants, in exercising their authorized police powers, have done so in a wilful, malicious, or capricious manner or with strong hand. Plaintiffs' claims alleged in the seventh count are without merit.
The plaintiffs have failed to prove the material allegations of the seven counts of their complaint.
Judgment may enter in favor of the defendants on each count of the plaintiffs' complaint.
STODOLINK, J.